## CONWAY'S EXR. vs. REYBURN'S EXRS.

An acknowledgment, to remove the bar of the statute of limitations, must relate to the particular claim sued upon.

An acknowledgment of indebtedness on the demand without specification of the amount due will take the claim out of the operation of the statute of limitations—leaving the amount to be settled by the proof.

An executor is not obliged to plead the statute of limitation to a just subsisting demand against his testator.

*Appeal from Hempstead Circuit Court in Chancery.*

Hon. L. B. GREEN, Circuit Judge.

WATKINS & GALLAGHER, for the appellant.

HEMPSTEAD, for the appellees.

It is sufficient to remove the bar of the statute, if the acknowledgment be of a debt due in whole or in part; and a promise to pay will be implied from the admission of a subsisting indebtedness. 4 *Eng.* 457; 5 *Eng.* 136, 137; 7 *Eng.* 764; 6 *Eng.* 670; 18 *Ark.* 522; 4 *Hump.* 183; *Barnard vs. Bartholomew,* 22 *Pick.* 294; 2 *Dev. & Batt. Ch. R.* 82; 2 *Hill's Ch. R.* 87; 9 *Md. Rep.* 52; 38 *Eng. Law & Eq.* 487; 1 *Cromp. & Mees.* 623; 1 *Man. & Gr.* 54; 24 *Conn.* 73.

Mr. Justice FAIRCHILD delivered the opinion of the Court.

The brief for the appellant is as follows: "The decree is "erroneous because in this case there is no such promise either "express or to be implied from the part payment, as will take "the case out of the statute of limitations. An acknowledg- "ment by the debtor of an indefinite balance due on the claim "will not save the bar of the statute as to any amount what- "ever. *Harrison vs. Philler,* 32 *Miss.* 257; *Bell vs. Morrison,* 1 "*Peters* 357; *Sutton vs. Burrus* 9 *Leigh* 381; *Aylett vs. Robinson,* "*Ib.* 45; *Smallwood vs. Smallwood,* 2 *Dev. & Batt.* 330; *Magee vs·* "*Magee,* 10 *Watts.* 172; *Anderson vs. Robertson,* 24 *Miss.* 389." The last sentence of the brief contains an important subject of inquiry, and upon its resolution the case of the appellant is made to rest. All the authorities cited in the brief above copied rest upon remarks found in the opinion of Judge STORY, in *Bell vs. Morrison,* 1 *Peters.* On page 360 he says: "If we proceed "one step further, and admit that loose and general expressions, "from which a probable or possible inference may be deduced "of the acknowledgment of a debt by a court or jury, that, as "the language of some cases has been, any acknowledgment, how-

292          CASES IN THE SUPREME COURT

Conway's Exr. vs. Reyburn's Exrs.          [OCTOBER

" ever slight, or any statement not amounting to a denial of the
" debt, that any admission of the existence of an unsettled
" account, without any specification of the amount or balance,
" and however indeterminate and casual, are yet sufficient to take
" the case out of the statute of limitations, and to let in evidence
" sufficient to establish any debt however large, and at what-
" ever distance of time, it is easy to perceive that the whole-
" some objects of the statute must be in a great measure defec-
" tive, and the statute virtually repealed."

We perceive the force of this reasoning: We assent to the
correctness of its conclusion, and we are willing to apply it to
a case within its proper meaning—and if the appeal in this case
brings for review a decree founded upon " an admission of the
existence of an " unsettled account, without any specification
of amount or balance," upon one that is " indeterminate and
casual," the appeal ought to be sustained, "that the wholesome
objects of the statute" may not be avoided, "and the statute vir-
tually repealed." But such a case as this would not fulfill the
exigencies of the broad proposition, submitted by the appellant;
that no acknowledgment of a debt, however determinate, cer-
tain and deliberate the acknowledgment of indebtedness may be
except in its amount, can save the debt from the statute. But
the opinion goes further upon this subject. On page 365 it
proceeds: " The evidence is clear of the admission of an
" unsettled account, as well from the letters of Butler, as the
" conversation of Morrison. The latter acknowledged that the
" partnership was owing the plaintiff; but as he had not the
" books he could not settle with him. If this evidence stood
" alone, it would be too loose to entitle the plaintiff to recover
" anything. The language might be equally true, whether the
" debt were one dollar or ten thousand dollars. It is indispen-
" sable for the plaintiff to go further, and to establish by inde-
" pendent evidence the extent of the balance due him before
" there can arise any promise to pay it as a subsisting debt."
The opinion then continues by impressing the danger which
would attend the admission of evidence of slight and loose

acknowledgments in its liability to mistake, and encouragement of perjury:

In the case cited, as in all cases, the general expressions used must be considered with reference to the facts of the case before the court, and can be no authority beyond such facts, however persuasive they may be from their reasonableness, from legal analogy, or from the respectability of the judge or court that delivers or sanctions them. And such was the meaning of the opinion, as appears from the further quotation: " Can an " admission, that something is due or some balance owing, be " justly construed into a promise to pay any debt or balance, " which the party may assert or prove before a jury? If there " be an express promise to such an effect, that might be pressed " as a dispensation with the statute; but the question here is " whether the law will imply such a promise, from language " so doubtful and general." Then, in this case, the question is not whether the proposition of the appellant might not cover such facts as make up the case of *Bell vs. Morrison*, but whether there be such acknowledgement in this case as shall dispense with the statute; and whether, if the language of acknowledgment be not doubtful and general like that in *Bell vs. Morrison*, but certain and particular as to the fact and character of the indebtedness, though not specific as to the amount, a promise to pay what shall appear to be due will not be implied. And the opinion in *Bell vs. Morrison* then takes another step to place its decision upon another point if the view of the case thus presented should appear to others to be more doubtful than it appeared to the court or to Judge STORY. The effect of the acknowledgment in that case is finally declared to be that which the Supreme Court of the United States supposed from the Kentucky decisions would have been attributed to it by the Kentucky courts. Notwithstanding the intrinsic merit of the opinion in *Bell vs. Morrison*, its conclusiveness upon what was actually decided, and the weight which the high authority of the court justly gives to its mere opinions and reasonings, that case has been considered to extend the statute of limitations to the

294    CASES IN THE SUPREME COURT

Conway's Exr. vs. Reyburn's Exrs.    [OCTOBER

utmost verge of the law. And one point of the case, that of the offer by Morrison to pay the plaintiff seven thousand dollars, not being taken as an admission that so much was due, is disapproved in another of the cases cited by the appellant. *Magee vs. Magee*, 10 *Watts* 175. And the result of our examination will show, whether, upon the sufficiency of an acknowledgment of general indebtedness, the reasoning and inclination, but not the decision of the case, have been respected as law. The case of *Magee vs. Magee*, 10 *Watts*, although it favors the reasoning of *Bell vs. Morrison*, only decides that the verbal conversations relied on were too indefinite to revive stale accounts barred by limitations, that before such an effect could be produced, the acknowledgment must be shown to refer to the demand sought to be revived. It will appear hereafter what the recent decisions of Pennsylvania are upon the sufficiency of an acknowledgment of general indebtedness."

The case of *Aylett vs. Robinson*, 9 *Leigh* 49, is, that a promise to settle is not a promise to pay a debt. It only declared what was not an acknowledgment of a debt, or promise to pay it; did not pronounce the effect of an undisputed acknowledgment. And *Sutton vs. Burrus*, 9 *Leigh*. 384, was where there was an acknowledgment of the plaintiff's account, subject to offsets, which the defendant had against it; which was well decided not to be an unqualified acknowledgment that the account, or any part of it was due. Some expressions of approval of *Bell vs. Morrison*, in the matter under consideration, were dropped, but they were foreign to the case.

In *Harrison vs. Philler*, 32 *Miss. Rep.* 238, the defendant said, upon the account being presented to him, that: "He thought "that it had been all paid but a small amount,"—" he did not "know how the matter stood, as his co-partner, Mark, had had "the management of it, and held the receipts; but that he did "not think that there was more than a few dollars due on it." The court well held that such a statement was not an acknowledgment of the debt. We fully agree with the Mississippi court, that the admission of a small but indefinite amount due

upon an account, is not an admission that the whole of it, or all the plaintiff can prove, is due. The court expressly said that the case before them did not require it to pass upon the effect of indefinite admissions, though it did say, that to allow the plaintiff to prove under them the amount due was believed to be an unsound rule, subversive of the true spirit and objects of statutes of limitations. *Anderson vs. Roberts*, 24 *Miss. Rep.* 389, relates to a part payment of a debt, not to its acknowledgment. The North Carolina case referred to in the brief of the appellant, we have not been able to see.

The account upon which the bill in this case is founded contains a list of charges from 1834, to the 15th of January, 1850, and of credits from November, 1837, to the 17th March, 1856 ; the charges being made against James S. Conway, in favor of Samuel W. Reyburn, and the credits are of course converse to the debits. The account was made out by the appellees, executors of the will of Samuel W. Reyburn, and was presented to the appellant, the executrix of James S. Conway. It exhibited an aggregate of indebtedness of nineteen thousand eight hundred and nine 64-100 dollars, and of credits to the amount of thirteen thousand five hundred and nineteen 15-100 dollars, and claimed a balance of six thousand three hundred and ninety 49-100 dollars.

To avoid the statute of limitations which the appellant pleaded to the demand, the appellees rely upon written acknowledgments and payments of Conway to Reyburn. The acknowledgments made by Conway are as follows :

" FAIR PLAY, ARK., 16 Jan., 1850.

" There is an unsettled account between Samuel W. Reyburn
" and myself of long standing, beginning as far back, as 1836,
" and amounting in the aggregage to a large sum of money.
" Mr. Reyburn has shown me a statement of the account made
" out by himself, but not having time now to examine into the
" matter as its importance requires, I have requested him to
" make out and transmit to me at an early period, a copy of

296    CASES IN THE SUPREME COURT

Cownay's Exr. vs. Reyburn's Exrs.    [October

" said account, that I may, at my leisure, examine it properly,
" and be prepared to make a final settlement.

J. S. CONWAY."

On the 20th June, 1852, Conway wrote to Reyburn, from which the following are extracts :

" Dear REYBURN: By the last mail your letter of the 10th
" instant came to hand, informing me that you were much in
" need of money to pay the expenses of schooling your children,
" etc. It affords me *some* satisfaction to have it in my power
" *now* to help you a little, but I would be much more gratified
" were it in my power to pay you all that I owe you." The letter mentions that a draft of two hundred and fifty dollars accompanies the letter, and continues : " Please acknowledge
" the receipt of the draft, and pass the same to my credit, and
" also credit me with your part of the *fee bill* against us in the
" Turner & Woodruff case; which I paid to the sheriff of this
" county last year, amounting to $26 25-100."

And in a letter of 26th March, 1853, Conway also writes :

" Dear REYBURN : Five days ago I got home from New Orleans,
" after an absence of four weeks, and received your letter of
" the 8th instant, requesting me to make you a payment of
" $800. On the preceding page you have my draft on my mer-
" chants in New Orleans for half that sum, which is all that I
" can spare now, in that quarter, but if old Mr. Mitchell of
" Magnet Cove, pays to my brother, Elias, his note in my favor,
" falling due the first of April, I will direct Elias to pay you the
" other $400, which you desire; you will please so inform my
" brother, and if he gets the money he will make you the pay-
" ment without further instructions. I shall write to him in a
" few days."

On the 27th of February, 1855, James S. Conway made his last will, in which he directs his executor and executrix to pay all his just debts, and in the will is the following: " When the
" note due from Andrew Mitchell, which my brother Elias is
" authorized to collect, is paid, he is authorized to pay upon my
" indebtednes to the late Samuel W. Reyburn, out of said money

" five hundred dollars, and to retain the balance of said money
" for his own use, and give my estate credit therefor, upon my
" indebtedness to him."

The important question of the case now comes up for answer:
whether the minute of Conway of 16th January, 1850, showing
the statement of Reyburn's account to him, the letters of 20th
June 1852, and of 26th March, 1853, and the allusion to his
indebtedness to Reyburn contained in Conway's will, are suffi-
cient acknowledgments of such indebtedness to withdraw it
from the operation of the statute of limitations.

As a preliminary matter, it may be conceded, because the
authorities fully establish it, that the acknowledgments to take
a case from the bar of limitations, must relate to the particular
demand sued upon. But in this case, there can be no difficulty
upon this head, for the account embraces the whole dealings of
the parties, and the acknowledgments relate to a general
unsettled account, and we have no hesitation in applying them
to the account presented to Conway's executrix, as it was made
up from drafts of amounts in Reyburn's hand writing, found
among his papers, after his death, and covers all the trans-
actions mentioned in the correspondence of Conway and Rey-
burn, and manifestly is such an account as that shown to Conway
at Fair Play, 16th January, 1850, being "an unsettled account
of long standing" and amounting in the aggregate to a large
sum of money." The letters and will of Conway admit an
indebtedness that must be construed to have a scope as exten-
sive as the dealings of Conway and Reyburn. This is such a
claim as that treated of in another case, where this very point
was under consideration, and where it was held, that no objec-
tion to the demand could arise, because the account was one
continuous demand, being a book account extending through
a series of years, with credits, with no rests, nor balances struck
between the parties. The new promise in that case, as the
written acknowledgment must be in this case, was applied to
the entire account of the plaintiff. *Barnard vs. Bartholomew,*

**298**    CASES IN THE SUPREME COURT

Conway's Exr. vs. Reyburn's Exrs.    [OCTOBER

22 *Pick*. 274; also see *Whitney vs. Bigelow*, 4 *Pick*. 112; 2 *Greenlf. Ev. s.* 441; *Guy vs. Tams*, 6 *Gill* 87.

The application of the written acknowledgments being settled, we proceed to ascertain their effect, upon a view of all the authorities to which we have been cited by the parties, and which have fallen under our observation in the course of our investigation of this subject. The authorities cited by the plaintiff have already been the subject of remark, others remain to be noticed.

The English decisions are uniform upon the sufficiency of an acknowledgment of indebtedness to save a debt from being limited by statute, though no sum be named as due. *Catling vs. Skoneding*, 6 *Term R.* 193; *Waller vs. Lacy*, 1 *Man. & Gr.* 54; *Bird vs. Gammon*, 3 *Bing. N. C.* 887, 890; *Walker vs. Butler*, 38 *Eng. Law and Eq. R.* 15, per CROMPTON, J.

We shall quote but few of the many American cases upon this point, and confine ourselves to such as are of a later date than *Bell vs. Morrison*. In 1838, but after the case named must have been known, the court of New Hampshire said: "But " when there is a promise to pay anything on account, and " there is testimony to show the amount the party conceives to " be due, the promise will extend to such sum." *Kittridge vs. Brown*, 9 *N. H.* 379. So in a case already quoted from upon another point, referring to the objection made against an acknowledgment, that it did not admit any specific sum to be due, it was pronounced, " unavailing, because the plaintiff has " by other evidence made that certain and definite, which was " general and indefinite in itself, and this it was competent " for him to do, if the acknowledgment, or new promise in the " letter was broad enough in terms to include the specific " demands now shown by other evidence to have existed, and " yet sufficiently particular, clearly to have included them as " the subjects of the new promise or acknowledgment." *Barnard vs. Bartholomew*, 22 *Pick*. 293; so is *Dinsmore vs. Dinsmore*, 21 *Maine* 437.

This point is decisively settled in Tennessee, as will appear

from the following quotation :—" But it is said, no specific sum " was admitted to be due, nor was there any promise to pay. " This is true; but we think admissions of indebtedness in a " specific sum, and an express promise to pay, are not essential " to take the case out of the operation of the statute of limita-. " tions. It is enough if an indebtedness be admitted in refer- " ence to a particular subject matter, and a willingness be " expressed to pay such amount as may be due. If it were " necessary that the acknowledgment should state the precise " sum due, it would be scarcely ever possible to prove an admis- " sion, which would take the case out of the statute. Some " adjustment of accounts between the parties is almost always " necessary in order to ascertain the amount due." *Hale vs. Hale*, 4 *Humph.* 184. So far as *Magee vs. Magee* 10 *Watts.* relied on by the appellant, may be considered approving and following *Bell vs. Morrison* upon the point under consideration, it is overruled by later decisions in Pennsylvania. The court says: " There must, it is true, be no uncertainty as to the debt " referred to, as is ruled in *Morgan vs. Watson,* but it has never " yet been supposed that the amount due must be named, or " ascertained at the time of the promise. If such stringent " proof as this was required, few cases would be taken out of " the operation of the act, as the debt is usually referred to in " general terms, without any reference to the amount due, and " that in many cases is not precisely ascertained." *Hazleboker vs. Recves,* 12 *Penn. State R.* 266. And again : "There is, there- " fore, nothing in the plea of the statute; for whatever opinions " may have been erroneously entertained heretofore, it is now " settled that, to take a case out of the statute of limitations, " it is not necessary, that the acknowledgments should refer to " the amount of the debt." *Davis vs. Steener,* 14 *Penn. State R.* 279; *Peterson vs. Ellicott,* 9 *Md. R.* 62.

From these and like authorities, we readily hold it to be the law, that an acknowledgment of being indebted on the demand sued upon, but without specification of the amount owing, will withdraw the demand from the statute of limitations.

In this case, the acknowledgments of Conway are of being indebted to Reyburn upon the state of their mutual accounts, and though Conway does not state the amount he owes, that is open to proof. That amount was the subject of inquiry and of determination in the court that tried the case. We are not asked to review the finding of the court from any vicious mode of computation adopted by it, or because the amount found to be due from Conway to Reyburn was excessive. Nor is the pertinency of the acknowledgments to the subject matter of the suit questioned.

Holding that Conway's statements in writing of owing Reyburn, apply to their whole dealings, and that they prevent the bar of the statute, we may say further, that we are satisfied that these acknowledgments related to a large indebtedness.

The memorandum of 16th January, 1850, mentions the account made out by Reyburn as of long standing, and of a large aggregate. The letter of the 20th January, 1852, mentions two hundred and fifty dollars, the amount of the draft sent with the letter, as a little help. The letter of 26th March, 1853, contained a draft of four hundred dollars on Conway's merchant in New Orleans, and information that Elias N. Conway was authorized to pay him four hundred dollars more, if a certain note which Conway had in his brother's hands, and was about due, should be paid. And upon the 18th of April, 1853, Elias N. Conway, under authority from James S. Conway, sent to Reyburn a check for four hundred dollars, thus making up the eight hundred dollars which Reyburn had asked of Conway, as appears by the letter of 26th March, 1853. Then when Conway's will was made, the 27th of February, 1855, he directed that when a note should be collected, five hundred dollars of it should be paid upon his indebtedness to Reyburn.

Looking at the whole course of dealing between the parties, the modes of payment practiced by Conway, as paying only upon request of Reyburn, and generally in less sums than was requested, with an uninterrupted course of admission of further indebtedness, we regard the acknowledgments as consistent

with the amount of Reyburn's demand, and not·of the indeterminate, casual, loose and indefinite sort, that are characterized in *Bell vs. Morrison,* and *Harrison vs. Philler,* as unworthy to be taken to withdraw causes of action from the force of the statute.

The amount of the demand, however, was the subject of evidence and of ascertainment by the court, with which we have nothing to do, in the way the case is presented. From the subsequent payments and admissions of Conway, it is evident that the final settlement, which in his minute of 16th January, 1859, he expressed a wish to, be prepared for, never was made. And so his executrix expressly admits in her answer. She, in effect, admits that upon a settlement, Conway would have been owing Reyburn, although she believes the amount would not have exceeded two or three thousand dollars, if it had amounted to so much. Our conclusion upon the point of law, made in the appellant's brief is adverse to the principle asserted by counsel. And no question of fact being made before us, and none capable of being made, so far as we perceive from the transcript, a decree of affirmance necessarily follows.

The same result would also attend the implied admissions, that attend the payments made by Conway.

This undoubtedly was a case of mutual dealings; the bill was brought to recover a balance due upon a mutual open account current, and the cause of action accrued from the 8th of April, 1853, the last item of credit, it being the last item upon either side of the account, except the credit of money paid by Elias N. Conway, after the death of James S. Conway. *Gould's Dig.* *Ch.* 106, *sec.* 20; *Angell on Lim. Ch. XIV. sec.* 5; *Higgs vs. Warner* 14, *Ark.* 196; 2 *Greenleaf's Ev. s.* 442; *Man vs. Cannon,* 2 *Porter,* 368; *Chamberlin vs. Cuyler,* 9 *Wend.* 128, *Penneman vs. Rotch* 3 *Metc.* 219, *Chambers vs. Marks,* 25 *Penn. State R.* 297.

The executrix was not well advised when informed that if the account was correct, it was barred by the statute of limitations, and that she was bound by law to reject it. We have seen that the account was not barred, and we should regret to

302          CASES IN THE SUPREME COURT

Conway's Exr. vs. Reyburn's Exrs.          [October

be obliged to accede to the unqualified proposition, that the representative of a deceased person is obliged to plead the statute to discharge his duty to an estate.    An estate does not belong to the heirs of an intestate person, nor to the devisees of a testator, till its debts are paid.    It is only the residue, after the payment of debts, that is subject to descent, or distribution, or to pass under a will.    And what a man owes is none the less a debt, because the statute of limitations has taken away the means of enforcing it.    *Rogers vs. Wilson*, 13 *Ark.* 512, and *Rector vs. Conway* 20 *Ark.* 83, were cases, in one of which, the administrator was seeking to recover his own demand, and in the other he was plainly colluding with the creditor to subject the estate to a stale and suspicious demand.    But both cases admit that there are decisions which hold that an administrator is not bound to plead the general statute of limitations.    And this is the law; 2 *Williams, Exors.* 1635 (*5th Am. Ed.*;) *Norton vs. Frecker*, 1 *Ark.* 526; *Lewin on trusts*, 520.    And *Hodgson vs. White*, 11, *N. H.* 208, which is cited as authority in *Rogers vs. Wilson*, is an express authority that an executor is not obliged to plead the statute of limitations against a well founded demand, although it states, that an administrator fails to plead the statute at his own peril, as he will not be allowed credit in his settlement for a debt subject to the statute, unless it was a subsisting just demand.    This we conceive to be the true extent of the obligation of an executor to plead the general statute of limitations.    But statutes prescribing the period of presentation of demands against estates must be pleaded, as it is the duty of an executor to close the business of an estate as soon as possible, and to avail himself of all the helps for so doing.

We do not object to statutes of limitation.    Their policy is eminently wise and beneficent.    But although promotive of public good, cases of individual hardship are its necessary fruits. Still, the general good must not be made to yield to single instances of wrong perpetrated under cover of an act which causes men to make frequent settlements, and relieves courts and parties from the vexation and dangers of ever continuing

accounts.   But it is an obligation resting upon no man to discharge an honest, subsisting debt by the plea of limitation. What would be infamous to be done by a man when alive, cannot be commendable or legally binding to be done for him by his representative, when he is dead.   By the will of James S. Conway, his executors were directed to pay his just debts, and in this his will was coincident with the requirement of the law.   Nothing is more inconsistent with what we know of Conway, as disclosed in his long and various dealing with Reyburn, than to suppose that he would himself have plead the statute to a just demand of Reyburn.   And what his executrix knew he would not have done, she was not bound to do to protect his estate.

We have refrained from discussing the effect of the payment made by Elias N. Conway, executor of James S. Conway, to the executors of Reyburn, not finding it necessary to examine that subject for the disposition of this case.   If the payment was made under the direction of the will of Conway, out of the proceeds of the Mitchell note, it would not legitimately raise the question.