## COX *v.* PHELPS.

Opinion delivered November 13, 1897.

LIMITATION OF ACTION—PAYMENT BY ADMINISTRATOR of an unprobated debt of his decedent which is secured by mortgage will not arrest the running of the statute of limitations with reference thereto if there was no order of the probate court authorizing such payment, although that court subsequently allowed the administrator credit for the payment in his settlement with the estate.

Appeal from Pulaski Chancery Court.

DAVID W. CARROLL, Chancellor.

STATEMENT BY THE COURT.

This suit was begun February 13, 1894, to foreclose a deed in trust made to secure a note given by N. G. Hewitt for $6,000 on August 1, 1879, due three years after date, for money borrowed of Mrs. Mary G. Van Horn. The property conveyed in the deed is lot 12 in block 1 in the city of Little Rock.

N. G. Hewitt died in February, 1887, leaving a will, which was probated March 18, 1887. N. G. Hewitt paid the interest on this note up to the time of his death. The note was transferred to Mrs. Sarah R. Phelps, the plaintiff in this suit, and was never probated against the estate of N. G. Hewitt, upon whose estate the appellant, N. W. Cox, was administrator with the will annexed in the county of Pulaski in the State of Arkansas, where this suit was commenced.

The several defendants in their answers to the complaint pleaded the statute of limitations of five years, and set up other defenses not discussed here.

It appears from the evidence in the case that D. Reeve, who was indebted to N. G. Hewitt, and had been requested by Hewitt in his lifetime to pay the interest on this note for him, after the death of N. G. Hewitt, made two annual payments of interest on the note secured by the deed in trust. The latter of these two payments was made December 23, 1889. Both payments were made with money which Cox, the administrator of N. G. Hewitt's estate, furnished Reeve, which he was unable to repay to Cox as such administrator, and for which he gave Cox as administrator his receipt. For the amounts thus paid Cox charged the estate of Hewitt in his settlement of said estate by crediting himself as administrator therewith, which was approved by the probate court.

It is claimed by the appellees that these payments kept the debt alive, and from being barred by the statutes of limitations up to the time suit was commenced.

*P. C. Dooley* and *Rose, Hemingway & Rose,* for appellants.

The claim of appellees is barred by the statute of limitations. An administrator has no right to pay any debt which has not been duly probated against the estate; and his action in so doing is a *devastavit,* and does not bind the estate or suspend the running of the statute of limitations in favor of the estate. 14 Ark. 247; 55 *id.* 232; 20 Kas. 338; 53 N. Y. 444; 32 N. W. 685; S. C. 68 Wis. 555; 20 Atl. 536–537; S. C. 136 Pa. St. 211; 7 Gray, 274; *id.* 387; 13 *id.* 381; 16 O. St. 566; 6 Johns. Ch. 266; 12 Rep. 51; 29 N. E. 501–2; 53 N. Y. 443; 66 N. Y. 352; 18 Atl. 795; 9 S. W. 390; 5 S. E. 727; S. C. 28 So. Car. 285; 30 Ark. 407; 52 Conn. 435; 9 Johns. Ch. 360. Payment made by administrator under order of court will not take case out of bar of limitation, unless there be an assent of the parties whose rights are to be effected. Wood, Limitations, 97 and 101; 11 Barb. 554; 9 Md. 317; 36 N. Y. 88; 14 S. W. 380; S. C. 88 Tenn. 255; 97 Pa. St. 322; 46 Ark. 373; 49 *id.* 91; 51 *id.* 82 and 84. Even if, by force of the will, there was a trust in the personal representative, the heirs are not affected by the acts of such representative. 5 S. E. 727; 28 S. C. 285; 6 Johns. Ch. 360; 14 S. W. 380; S. C. 88 Tenn. 255; 16 O. St. 566–571; 6 Johns. 292.

If any agency to pay the debt subsisted, it was revoked by the death of Hewitt. 8 Wheat. 174; Mechem, Agency, 240. The statute applies to "mortgages" *or* "deeds of trust." Sand. & H. Dig., § 5094. Failure to protest a foreign bill for non-payment discharges the maker. 1 Dan. Neg. Inst., 7–9; 2 *id.* § 971; Benj. Chalm. Dig., 180; Byles on Bills, 444 (292); 3 Rand. Com. Pap. 1199; Tied. Com. Pap. 334; 2 Dan. Neg. Inst., 1075; Tied. Com. Pap. 355.

*Dodge & Johnson* for appellees.

The executor was really a trustee, and it was his right and duty to protect the equity of redemption by preventing a foreclosure. 10 Gratt. 651; Perry, Trusts, 347; 49 Pa. St. 484 (S. C. 88 Am. Dec. 510;) 130 Mass. 481; 98 N. Y. 309; 8 Paige, Ch. 152; S. C. 35 Am. Dec. 676; 55 Ark. 233; Wood, Limitations, §§ 188, 190. Part payment of principal or interest by a mortgagor or his agent forms a new starting point for the statute of limitations to run from. 12 Eq. Cas. 51; 1 De. G. & J. 1; 32 Conn. 288; 10 Cush. 72; 8 Metc. 87; 37 Iowa, 570. If this part payment be made *before the statute bar has attached*, it may be made by one of the joint debtors, and be binding on all. In this the case at bar is materially different from what it would be if the debt had already been barred before the payment was made. 10 Ark. 110; 11 Ark. 187; 19 Ark. 693; 5 Ark. 551; 20 Ark. 189; 10 Ark. 163; 14 Ark. 201; 14 Ark. 217; 12 Ark. 782; 12 Ark. 780; 61 Barb. 190; 45 Mo. 365; 35 Conn. 299; 20 Ark. 188, 189; 5 Ark. 551; 19 Ark. 693. Such part payment may be made by an executor or administrator. 13 O. St. 271; 20 Pa. St. 214; Angell, Lim. 278, 281; 1 H. Bl. 104; 2 Saund. 117; 1 Halst. 405; 1 McMul. Eq. 331; 1 McC. Ch. 175; 5 Serg. & Rawle, 232; Harper (S. C.), 355; 2 Eq. 567; 1 Har. & John. 109; 4 *ib.* 527; 5 Gill & Johns. 498; 8 *ib.* 135; 8 Mass. 134; 13 *ib.* 213; 7 Halst. 255; 3 Call, 248, 252; 9 D. & R. 40; 22 Eng. C. L. 385; Ryan & Moody, 416; 15 Me. 360; 16 Mass. 429; 13 Wend. 35; 2 Leigh, 534; 1 Harr. (Del.) 128, 209; 2 Harr. 204; 17 John. 331; 5 Binn. 573; 1 Minor (Ala.), 353; Const. Ct. S. C. 111; 2 Hayw. 7; 4 Cow. 494; 19 Wend. 493; 4 Mon. 36; 15 Johns. 3; 16 Mass. 429; 2 Leigh, 534; 61 Barb. 19;

36 N. Y. 88; 10 Md. 197; 16 Mass. 429; 66 Mass. 327; 6 John. 3; 12 B. Mon. 408· 4 Mon. 36; 9 Ala. 502; 20 Ala. 147; 17 Ga. 96, 99; 13 Gratt. 346; 52 N. H. 60; 3 N. H. 468; 11 N. H. 211; 3 Redf. Wills, 289 and note; 10 Humph. 211; 4 Harrington (Del.), 368; 36 N. J. L. 45; 2 Gr. Ch. (N. J.), 311; 7 Halst. 247; 25 Md. 587; 2 Smith's Lead. Cases, 388; 4 Strobh. (S. C.) 68; 61 Barb. 190; 104 N. Y. 648; 36 N. Y. 90; 8 N. Y. 362; 26 Barb. 316; 58 Mo. 90; 11 N. Y. 185. The failure to protest the order or draft did not discharge the mortgage. 28 Ark. 166; ·49 Ark. 512. The order was not a payment of the original debt. 78 N. Y. 293, 298; 8 Johns. 389; 37 N. Y. 312; 1 Cow. 390; 4 N. Y. 314; 54 N. Y. 581, 586; 13 N. Y. 556; 43 O. St. 453; 32 St. Rep. 953; 80 N. Y. 100; ·38 N. Y. 289; 2 Wash. C. C. 191; 128 N. Y. 19. If the holder had lost his right on account of failure to protest the bill or order, the subsequent payment of interest on the original note revived the liability. 36 Pa. St. 529; 16 N. H. 410; 5 Mo. 544; 32 Me. 72; 33 Md. 412; 5 Sm. & M. (Miss.) 51; 18 C. B. 357; 48 Barb. 148; 5 Johns. 248; *ib.* 375; 16 *ib.* 152; 8 *ib.* 384; Anth. N. P. 205; 3 N. Y. Leg. O. B. S. 33; 30 N. Y. St. Rep. 124; 71 N. Y. 14; 47 N. Y. 273; 71 N. Y. 14; 23 Wend. 383; 2 Camp. 188; 14 Mo. 59; 26 Eng. L. & E. 283; 2 C. B. 258; 2 Sand. 166; 73 Eng. Com. L. 1010; 20 Vt. 669; 20 How. 496; 39 St. Rep. 669; 20 How. 175. Payment by executor of interest on an unprobated demand is not a *devastavit.* Act of March 25, 1889, does not extend five year statute to make it cover a case like this. 34 Ark. 312. Appellants saved no exceptions below, and there is nothing before this court. 28 Ark. 77; 33 *ib.* 100; 16· Peters, 169; 4 Wall. 502; 4 Peters, 426; 56 Ark. 623; 31 Ark. 476; 34 *id.* 526; 36 *ib.* 263.

*P. C. Dooley* and *Rose, Hemingway & Rose,* in reply.

Executor is not a trustee. Perry, Trusts, 500; 2 Ohio, 127; 21 Wend. 430. No exception need be taken to a decree. 58 Ark. 123; 27 *id.* 58; 52 *id.* 283; 38 *id.* 477; 46 *id.* 17.

HUGHES, J., (after stating the facts.) Unless the payments made by D. Reeve with money of the estate of N. G.

Hewitt, furnished him by N. W. Cox, administrator of said estate, and for which Cox was allowed credit, as administrator, in his settlement of Hewitt's estate, by the probate court of Pulaski county, prevented the bar of the statute of limitations, this action was barred when the suit was begun. The inquiry then is, do these payments have the effect in law to prevent the bar of the statute of limitations? Is the plaintiff's right of action tolled, notwithstanding these payments?

"Actions on promissory notes and other instruments in writing not under seal shall be commenced within five years after the cause of action shall accrue, and not afterwards." Act Dec. 14, 1844 (Sand. & H. Dig., § 4827). This note was not under seal.

"Actions on writings under seal shall be commenced within five years after the cause of action shall accrue, and not afterwards. *Provided*, this act shall not apply to any instrument now in existence." (Sand. & H. Dig., § 4828,) Act March 29, 1889.

According to the statutes, the right of action on this note was barred within five years from its maturity, unless suit thereon was commenced within the five years, or unless the running of the statute was stopped by a payment thereon within the five years.

Section 5094, Sand. & H. Dig., provides that "in suits to foreclose mortgages or deeds of trust it shall be sufficient defense that they have not been brought within the period of limitation prescribed by law for a suit on the debt or liability for the security of which they were given."

It will appear from the statement of facts that the note secured by the deed of trust was given August 1, 1879, and was due three years after date, that is, on August 1, 1882; that the last payment of interest was after N. G. Hewitt's death, in February, 1887, and was made by D. Reeve December 23, 1889, with money of Hewitt's estate furnished him by Cox, administrator of said estate, for which Cox was allowed credit in the settlement of said estate, which was approved by the probate court of said county. Cox furnished this money without any order of the probate court, and it does not appear that any application had been made to said court for an order, or

that any order by said court for the redemption of said lot from the mortgage was ever made. It does appear that said note was never probated, nor allowed as a debt against the estate of N. G. Hewitt, deceased.

Before an administrator can pay or allow any claim against the estate of which he is administrator, the claimant must append to his demand an affidavit of its justice, stating that "nothing has been paid or delivered toward the satisfaction of the demand, except what is credited thereon, and that the sum demanded, naming it, is justly due," etc. Sand. & H. Dig. § 114; *Ross* v. *Hine*, 48 Ark. 304; *Alter* v. *Kinsworthy*, 30 Ark. 756.

If the administrator could not allow or pay a claim at all unless the same was authenticated by law, could he by payment upon it stop the running of the statute of limitations?

"A part payment which will revive a debt barred by limitation, or form a new point from which the statute will begin to run, must be such as can be treated as an admission of the continued existence of the debt, and an implied promise to pay the balance." *Chase* v. *Carney*, 60 Ark. 497; *Taylor* v. *Foster*, 132 Mass. 33. "It was therefore necessary, by the rules of special pleading, to avoid the statute of limitations, to reply a new promise, under which it was competent to prove an acknowledgment of the debt. * * * It is not enough to prove an admission of indebtedness, if it is accompanied by circumstances which repel such inference, or even leave it in doubt whether the party intended to revive the cause of action." *Roscoe* v. *Hale*, 7 Gray, 275; *State Bank* v. *Woody*, 10 Ark. 642. In the case cited from 7 Gray it is held that "the payment of a dividend by an assignee under the insolvent laws will not take the residue of the debt out of the statue of limitations against the debtor." (Syllabus). "Proof of payment of part of a debt is, in legal effect, only evidence of an acknowledgment from which a promise to pay the remainder of the debt may properly be inferred." *Id.* p. 276. Wood, Lim. § 97; *Alston* v. *State Bank*, 9 Ark. 459. "The part payment must be under such circumstances as reasonably, and by fair implication, lead to the inference that the debtor intended to renew his promise of payment." *Taylor* v. *Foster*, 132

Mass. 33. "And it must have been made by the debtor in person, or by some one authorized by him to make a new promise in his behalf. And a payment made by a third person, without authority from the debtor to make it, cannot remove the statute bar, because it does not imply any acknowledgment of the debt by the debtor. Under this rule it is held that a partial payment by an assignee for the benefit of creditors will not remove the bar as to the assignor. * * * * * * Nor will a payment by an administrator, under surrogate's decree, take the debt out of the statute, as to the residue." Wood, Limitations, § 101. This is equally applicable to a part payment before the debt is barred, which might, if it amounted to a promise to pay the balance of the debt, form a new point from which the statute would commence to run. But if the administrator, under our probate system, could neither allow nor pay a debt not probated against the estate of which he is administrator (which is the case), how can it be said that the payment by Reeve for Cox, the administrator of Hewitt's estate, of the interest on this note prevented the bar of the statute attaching, when there was no order of the probate court authorizing such payment, or authorizing redemption of the lot from the mortgage? How could this be construed into an acknowledgment of the existence of the debt, from which a new promise to pay the balance could be fairly inferred? There was no authority in Cox to make the payment. There could be none to suspend the operation of the statute of limitations by a promise he was not authorized to make. His promise could not set aside the law. No promise could be inferred from such payment. The administrator has no concern with the real estate, unless needed by him as assets for the payment of debts. This was a debt he never could have paid legally, because it was not proved or allowed against the estate, having been barred as against the estate by the two years statute of non-claim when suit was brought.

The decree of the circuit court foreclosing the mortgage is reversed, and the cause is dismissed for the want of equity, as as to the parties appealing.

OPINION ON MOTION FOR REHEARING.

Filed May 21, 1898.

BUNN, C. J., (dissenting.)   In his life time, Nelson G. Hewitt borrowed of Mrs. Van Horn $6,000, and, to secure the payment of the same, gave his deed of trust on a certain lot described in suit, situated in the business portion of the city of Little Rock.   The money was borrowed to put a brick building on the lot mortgaged.   The building was erected, and the lot, thus improved, was worth largely more than the amount of the mortgage debt,—perhaps several times more.   Hewitt continued to pay, directly and through his agent, the annual interest until his death.   He died, having made a will, with provision as to care of his property and its disposition at the end of a certain time, or the happening of certain events; leaving it to be managed and controlled in the meantime by certain persons therein named.   The testator died at his then residence, in the state of New York, where also his executor and trustee reside.   Letters of administration were taken out here, and the appellant, Cox, was appointed administrator. Before his death Hewitt had made Reeve (a debtor to him) his agent here to see to the payment of the interest on the mortgage debt, and taxes, etc.   After his death, Reeve, finding that he could not pay the interest (being without means), prevailed on Cox, the administrator, to advance the necessary money to pay each of two instalments of interest, which he did, treating said payments as money paid for the benefit of the estate, and his payments of the same were duly approved and allowed by the probate court, in each of the two annual accounts.

The statute bar had attached to the mortgage debt (the same never having been probated against the estate of Hewitt) before the institution of this foreclosure proceeding, if the payment of the instalments of interest by Cox, the administrator, did not have the effect of fixing a new date from which the statute began to run on the debt.   If, however, these payments had the effect of fixing the date of the last one from which the statute began to run, then the debt is not barred by the statute.

The rule with regard to the effect of partial payments, as affecting the running of the statute of limitations, is that they must be made by one having authority from the debtor, or by operation of the law in case of his death, as in this instance, to make them for the benefit of the estate or the creditors thereof; for one being required to make such payments, or at least being authorized to do so, can only make a new promise for the deceased when required to do so, or authorized by law to bind the estate by so doing. It is readily to be seen, therefore, that the question, and the only real question, in this case is *were the acts of Cox, as administrator, in paying these instalments of interest, legal, and therefore binding upon the estate of which he was the administrator?*

Naturally, we may say, the appellants appeal to our statutes on the subject of the allowance and payment of claims against estates, and the prohibition therein against administrators paying any other than those duly authenticated. I shall not stop to say more on this particular matter than that it is the settled law that no claim capable of assertion, either due or running to a certain maturity in the future, and which is the subject of a judgment of some court of competent jurisdiction, can be paid without such authentication. This leaves a numerous list of cases, however, which may be paid without such probation within the two years fixed as the statute of non-claim, because they cannot be asserted under the rule at any time within said two years, or for other reason do not come within the statutory definitions of claims to be probated. *Walker* v. *Byers*, 14 Ark. 246.

But the question of payment of *debts*, whether probated or not against an estate, is not involved in this case, but rather the question of the protection of property of the estate by the administrator.

When the annual interest, after the death of Hewitt, was coming due, Dodge, the trustee in the deed of trust, demanded the same of Cox, the administrator. This demand naturally carried with it the purpose of the trustee to forego foreclosure proceedings in case the demand was complied with, on the idea that the payment by Cox, as administrator, would "keep the debt in date," to use a common expression. The same idea

was doubtless entertained by Cox. The situation was this at that time: The interest was due, the debt and mortgage was still unaffected by the statute of limitations; and the trustee informed Cox that he would be compelled to resort to foreclosure proceedings unless the interest was paid; and Cox had no funds in his hands belonging to the estate with which to redeem from the mortgage, either at his own risk or under an appropriate order from the probate court, as provided by statute. If the mortgage property was greatly more valuable than the mortgage debt (which it was in this case), and a forced sale would be detrimental to the estate, which it plainly would have been under the circumstances, what was the lawful duty of the administrator in the emergency? Plainly, to do just what he did at the time,—protect the impotent estate from irreparable loss, by advancing his own funds, and trust to the probate court, a court of general jurisdiction of the subject, to reimburse him, and necessarily thereby to ratify and confirm his acts, which it did. Reducing the question down to its last analysis, the power of the probate court to approve of such an item in favor of the administrator is called in question, and not only so, but denied by the judgment rendered in this case heretofore by this court, and also by a denial of the petition to rehear.

It is not denied, but really insisted upon, that, if the administrator conceived it to be to the interest of his estate to prevent a forced sale of the mortgaged property, he should have filed his petition in the probate court, under section 198 of Sand. & H. Dig., and obtained leave to redeem from the mortgage by an expenditure of the necessary funds in hands belonging to the estate; or, in case he did not have funds sufficient to redeem without injury to creditors, he might have asked an order to sell the equity of redemption in the lands mortgaged.

The note secured by the mortgage, was in the following words: "$6,000. Little Rock, Ark., August 21, 1879. Three years after date, for value received, I promise to pay to the order of Mary C. Van Horn $6,000, without discount or defalcation, with interest upon the same at the rate of 10 per cent. per annum from date until paid, interest payable semi-annually, and principal and interest payable at the

law office of Dodge & Johnson, Little Rock, Arkansas, and secured by deed of trust on lot 12, block 1, City of Little Rock.                    (Signed)        N. G. HEWITT."

In Hewitt's life time, the interest was paid up to December 3, 1887, and the two payments by Cox, the administrator, after the death of Hewitt of $602.25 and $600.75 were made on the 22d of December, 1888, and December 23, 1889, respectively.

It appears also that the insurance and taxes had been kept up and paid by Cox as administrator regularly since the death of Hewitt, and all the expenditures had been approved by the probate court without objections on the part of any one, and the query is, what authority was there in Cox, as administrator, to pay the insurance and taxes, more than there was to pay the interest on the mortgage? There can be but two answers to that query. The one is, none; the other is, if the taxes were not paid, there would be a forfeiture, by law, of the estate of the legatees or heirs; and to prevent that it was not wrong to appropriate the money belonging to creditors, forsooth, to protect the interest of the legatees or heirs; and if the insurance were not paid, these same heirs might suffer loss by fire, and not be indemnified by insurance; and so in that case they would sanction the payment of money belonging to others to save themselves harmless.

Neither was the payment of the two instalments of interest ever in any manner objected to, but only claimed to have been made without authority, and that only after the statute of limitations had barred the mortgage debt, unless these payments removed or postponed the statute bar, which it is claimed they did not, because made without authority.

There can be but one sound legal reason assigned why an administrator is not only not authorized, but also not bound, to protect an estate situated as was this by the payment of interest to prevent a sacrifice of the property. And that is that it is not for the interest of the estate for him to do so. Was it for the interest of the estate in this instance? The appellants (Cox and the heirs and legatees) contend that it was not, because, in effect, they say it turns out to be ·to the interest of the estate to hold these payments void, since this

theory cancels the debt, and therefore the mortgage lien, the subject of the statute bar, and appellants thus obtain the property without paying the debt—without paying for it—for the mortgage debt was for money used in creating the part of the property of the greater value,—the building thereon. The mistake in this is in viewing the action of the administrator, and measuring his duty, from the circumstances surrounding him at the time of the institution of this suit, when, according to the contention of appellants and the judgment of this court, the mortgage debt was barred, rather than defining his duty and measuring his acts at the time he performed them; that is, made the payments of interest. At that time it was manifestly to the interest of the estate that he should have paid the accrued interest. Looking at it through the " hindsights," however, it is equally manifest that it saved money to the heirs and legatees, not the estate, not to have kept the debt in date by partial payments or otherwise.

I am aware that the courts have nothing to do with the merely moral actions of men, and also that the acts of limitations are good legal defenses, when well pleaded, and applied properly; but I have yet to find a case where one, to prevent a sacrifice of his property, prevails upon his creditor to grant him time on his performance of a part of his contract, and is permitted afterwards to rid himself of the entire obligation because of the favor extended to him. There are some things so inherently wrong that the doing of them cannot be protected by limitations.

It is contended that, in order for the administrator to possess authority to pay the installments of interest, he must have procured an order of the probate court, under section 198 of Sand. & H. Dig., to enable him lawfully to do so. We have seen that he had no money in his hands with which to redeem, and, without the money in hand or in sight, he had no right to ask the court for an order to redeem. (An order would be necessarily of such a nature in terms as he could not comply with). It is also useless to ask an order to sell the equity of redemption; for, having no sufficient means, he could not be relieved by bringing on himself the burden of a forced sale in this way. Besides, the statute after all is

manifestly only cumulative, as it provides a mode of doing a duty which is only cumulative of a right and duty already existing, and inherent in the very nature of the office of administrator. Had there never been any such statute, an administrator lawfully in charge of an estate would have the right to redeem the property of an estate when such redemption would be for the benefit of the same, or its creditors, by payment, if he had sufficient funds on hand, or by foreclosure and sale thereunder to pay off the incumbrance, and to receive the balance over, as the value of the equity of redemption. Without a statute on the subject, he would redeem on his own motion, running the risk of the redemption turning out to be for the interest of the creditors or the estate or not. But whether or not the redemption was for the benefit of the estate could not be determined upon the probable contingency of the running of the statute of limitations, so as to create the statute bar in the future; for, if that were in contemplation, the administrator should refuse to pay at all, and thus put the incumbrancer on notice of what to expect. In such case it is presumed the latter would foreclose, and subject the property to forced sale, with all its consequences to the estate and its beneficiaries, without means to purchase or redeem.

The statute, while cumulative, as I have said, yet has this advantage to the administrator: If he is able to redeem, and does redeem, under the orders of the probate court, as in the statute provided, he will not be responsible to the estate or its creditors for any lack of the property realizing enough to repay the redemption money. Furthermore, the order to redeem, if essential at all, need not be obtained before the money is paid or redemption accomplished. Money paid to accomplish that end will be approved as a credit to the administrator by the probate court, if found to have been for the benefit of the estate, and such approval will stand as good as if a previous order had been made. On this identical subject, this court, in *Byers* v. *Stevenson*, 42 Ark. 559, said: "The claim never having been proved against the estate, the executor properly had nothing to do with it. The probate court might, indeed, upon the applica-

tion of any person interested in the estate, have ordered him to relieve the property from the incumbrance, if funds were in his hands available for that purpose;" citing the statute, Sand. & H. Dig., § 198, which is the very section which appellants say should have been followed in order to confer upon the administrator the authority to redeem. Continuing, this court said: "And it might well have sanctioned the payments made by him as beneficial to the estate, and not injurious to the creditors. But it refused to allow credit for the sum, etc." There can be nothing plainer than this language in the foregoing. The probate court might well have sanctioned the payment, and allowed credit therefor, and the administrator's act in making the payment would have thus been made valid and authoritative; and that, of course, would have carried with it the power to bind the estate by such payments in all respects as the same had been made by the deceased in his lifetime.

With the facts before us, we can not well see the necessity of an administration upon the Hewitt estate in this state, unless it was to preserve this very same property. The Reeve matter seems to have been useless.

I think, for the foregoing reason, as well as for some very cogent ones in addition, assigned by the counsel for appellees, the decree should have been affirmed in the first instance, and that the motion for a new hearing should be granted.