CLEMMONS *v.* CLEMMONS, ADMINISTRATOR.

4-5507                                    128 S. W. 2d 994

Opinion delivered May 29, 1939.

*Reinberger & Reinberger* and *E. D. Dupree, Jr.,* for appellant.

*M. Danaher* and *Palmer Danaher,* for appellee.

McHANEY, J. This case was tried on an agreed statement of facts which is as follows: "On August 25, 1935, A. J. Clemmons was appointed administrator of the Estate of Polk Clemmons, deceased. Various claims were filed and approved and paid by the administrator. On August 19, 1936, Earl H. Clemmons, one of the heirs of Polk Clemmons, deceased, filed his claim in the office of the clerk of the county and probate court for the sum of seventeen hundred twenty-six and 36/100 dollars ($1,-726.36) representing an account which he had purchased from the old Tamo Mercantile Company. This claim was approved on the same day by the administrator. The heirs did not file any objection to the payment of the claim in the probate court.

"On February 2, 1937, this claim was approved by the probate court and classed as a third class claim and on February 3, 1937, a check was issued by the administrator to Mr. Earl H. Clemmons for the sum of seventeen hundred twenty-six and 36/100 dollars ($1,726.36).

"On March 17, 1937, an affidavit for appeal was filed by James H. Clemmons, another of the heirs of Polk Clemmons, deceased, and appeal was granted to the circuit court on the same day. No supersedeas bond was given upon this appeal.

"On September 13, 1937, the claim of Earl H. Clemmons was reduced by the circuit court from the sum of seventeen hundred twenty-six and 36/100 dollars ($1,-726.36) to sixty-nine and 37/100 dollars ($69.37), and a certified copy of said order was filed in probate court on September 20, 1937.

"On October 12, 1937, the second and final settlement of A. J. Clemmons as administrator of the estate of Polk Clemmons, deceased, was filed by the administrator. Included in this settlement was an allowance of $1,726.36 for the claim of Earl H. Clemmons, which had been paid by the administrator.

"On October 14, 1937, exceptions were filed to this final settlement by James H. Clemmons, Mrs. G. F.

Botts, Mrs. B. B. Cummings, and Mrs. Mike Fry, all heirs of Polk Clemmons, deceased.

"On January 24, 1938, on oral argument by counsel, final settlement was approved as filed by the Lincoln probate court. Appeal was granted James H. Clemmons on February 10, 1938. This cause was submitted to the Lincoln circuit court at its regular term on February 14, 1938 in Star City to be heard in Pine Bluff later.

"All other claims against the estate of Polk Clemmons except that of Earl H. Clemmons had been paid by the administrator before February 2, 1937.

"It is agreed that the above writing is a statement of facts which may be taken as true by the court in the trial of this case without other evidence concerning such facts. Either party may object to the competency, materiality, or relevancy of any of the facts so stated at the trial, and may except to the ruling of the court upon such objection."

In addition certain testimony was offered by the witness, A. J. Johnson, for appellant. This was excluded by the court because Mr. Johnson was the attorney for appellee, the administrator, who objected to his testimony. We agree with the trial court that this testimony was inadmissible. Section 5156, Pope's Digest, sub-division 4.

The question presented by this appeal is whether an administrator is bound, under all circumstances, to plead the general statute of limitations against a claim apparently barred, but which is otherwise an honest debt of the decedent. We do not think so, although there is apparently some conflict in our decisions, which we think more apparent than real.

We also think the fact that the circuit court, on the first appeal from the order of allowance of the probate court, reduced the amount of the claim very substantially long after it had been paid by appellee can have no bearing on this appeal. As said in 24 C. J. 499, "A payment or distribution in good faith in accordance with an order or decree of court will generally protect a represen-

tative and release him from further liability, although the order or decree is subsequently reversed . . ." There is nothing here to show bad faith and it is not disputed that the debt was a just claim.

Now, as to whether the administrator can waive the operation of the statute of limitations, this court in *Conway's Exc'rs.* v. *Reyburn's Excrs.*, 22 Ark. 290, said: "But it is an obligation resting upon no man to discharge an honest subsisting debt by the plea of limitation. What would be infamous to be done by a man when alive, cannot be commendable or legally binding to be done for him by his representative, when he is dead. By the will of James S. Conway, his executors were directed to pay his just debts, and in this his will was co-incident with the requirement of the law. Nothing is more inconsistent with what we know of Conway, as disclosed in his long and various dealing with Reyburn, than to suppose that he would himself have plead the statute to a just demand of Reyburn. And what his executrix knew he would not have done, she was not bound to do to protect his estate." In *Scott* v. *Penn*, 68 Ark. 492, 60 S. W. 235, this court said that, "An administrator is not bound to plead the statute of limitations under ordinary circumstances." In *Rhodes* v. *Driver*, 108 Ark. 80, 157 S. W. 147, Ann. Cas. 1915B, 258, it was said: "Our court, although it has said that an administrator should plead the statute of limitations in bar of a claim presented against the estate for allowance, it has nevertheless held that an administrator's settlement, claiming credit for payment of such a claim which could have been defeated by a plea of the statute of limitation, after its confirmation, will not be set aside by a court of chancery for fraud on that account. *Williams* v. *Risor*, 84 Ark. 61, 104 S. W. 547; *Dyer* v. *Jacoway*, 50 Ark. 217, 6 S. W. 902; *Conway* v. *Reyburn*, 22 Ark. 290. The administrator, of course, pays such a claim at his peril, for, if he be not allowed credit therefor by the probate court upon his settlement, he necessarily stands charged with the amount so paid, and he and his sureties remain liable therefor to those interested in the distribution of the estate."

Quoting again from Judge Fairchild's opinion in *Conway's Exr.* v. *Reyburn's Exrs., Supra,* it is said: ". . . we should regret to be obliged to accede to the unqualified proposition, that the representative of a deceased person is obliged to plead the statute to discharge his duty to an estate. An estate does not belong to the heirs of an intestate person, nor to the divisees of a testator, till its debts are paid. It is only the residue, after the payment of debts, that is subject to descent or distribution, or to pass under a will. And what a man owes is none the less a debt, because the statue of limitations has taken away the means of enforcing it. *Rogers* v. *Wilson,* 13 Ark. 507, and *Rector* v. *Conway,* 20 Ark. 79, were cases, in one of which, the administrator was seeking to recover his own demand, and in the other he was plainly colluding with the creditor to subject the estate to a stale and suspicious demand. But both cases admit that there are decisions which hold that an administrator is not bound to plead the general statute of limitations. And this is the law; 2 Williams, Exrs. 1635 (5th Am. Ed.) *Norton* v. *Frecker,* 1 Ark. 524; Lewin on trusts, 520, And *Hodgdon* v. *White,* 11 N. H. 208, which is cited as authority in *Rogers* v. *Wilson, supra,* is an express authority that an administrator fails to plead the statute at his own peril, as he will not be allowed credit in his settlement for a debt subject to the statute, unless it was a subsisting just demand. This we conceive to be the true extent of the obligation of an executor to plead the general statute of limitations. But statutes prescribing the period of presentation of demands against estates must be pleaded, as it is the duty of an executor to close the business of an estate as soon as possible, and to avail himself of all the helps for so doing."

Appellant cites and relies on *Abbott* v. *Johnson,* 130 Ark. 1, 195 S. W. 676, where it was said that the administrator did not have the power to waive operation of the statute of non-claim or the general statute of limitations, and cited *Cox* v. *Phelps,* 65 Ark. 1, 45 S. W. 990, to support the statement. When the facts in the Abbott case are carefully considered, it will be seen that the

language used in so holding was not necessary to a decision of the case and was *obiter dicta,* as the point was whether the payment of interest by Abbott, the administrator, on a non-probated claim and his request to Johnson not to foreclose until after the period covered by the interest payment had elapsed, which was acceded to by Johnson, tolled the statute of non-claim and the statute of limitations. And the case cited, *Cox* v. *Phelps, supra,* did not support the *dicta,* as the point there decided was that an administrator, by making a payment on a debt of his intestate, did not toll the statute.

Here, while the claim was that of a brother of the decedent and the administrator, it is not questioned that it is a just debt of the decedent. It was presented to appellee, was allowed and filed, showing his approval thereof for the full amount on August 19, 1936. No objection was ever filed to it by any heir. On February 17, 1937, nearly six months later, no objections being filed, the court examined, allowed and ordered the claim paid. It was paid on February 3, 1937. All other claims had been paid long prior thereto. If the heirs had any valid objections to its allowance and payment, they should have presented them. They knew the claim was pending, and their failure to make timely objection prior to action by the court and payment by the administrator is chargeable to their own neglect.

We find no error, and the judgment is affirmed.