# BIG DIAMOND MILLING COMPANY v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

### April 11, 1919.

### No. 21,033.

**Carrier — action by shipper to recover excessive charges — statute.**
 1. Chapter 195, Laws 1909, authorizing the attorney general to sue for recovery of excessive freight charged by railway corporations, has no application to a suit by a shipper.

[1]Reported in 171 N. W. 799.

**Limitation of action — new promise — letter to the public.**

   2. A new promise in writing, made either before or after the debt is outlawed, starts a new period of limitation. The new promise must identify the debt, but specific reference to it is not necessary if the language with certainty covers it. Language that would be sufficiently specific in a bond is sufficiently specific in a new promise. A promise to pay all claims of a class is sufficient. A letter to the public signed by a railroad company, promising to refund the difference between a statutory freight rate and a higher rate collected, on all shipments made during a period of litigation to determine the validity of the statutory rate, is sufficiently definite.

**Same — new promise conditional on proof of claim.**

   3. A conditional new promise becomes effectual to revive a claim on fulfilment of the condition by the creditor or on his readiness to fulfil. Where a promise was to pay properly supported claims and the plaintiff submitted claims supported by proof, whereupon the defendant expressed regret that plaintiff had taken the time and trouble to furnish proof and declined the claims, for the sole reason that its own records had been destroyed so that it was unable to verify the claims, defendant will not be heard to complain that plaintiff's claims were not properly supported.

Action in the district court for Ramsey county to recover $2,641.77 overcharges collected by defendant on shipments of grain. The answer set up the statute of limitations. The reply set up the facts of the litigation in the Federal courts over the legality of the maximum freight rates established by the Act of 1907, the duties placed on the carriers by chapter 195, Laws 1909, and the promise of defendant to pay all the claims against it accruing after the year 1907. The case was tried before Michael, J., who at the close of the testimony dismissed the action. From an order denying its motion for a new trial, plaintiff appealed. Reversed.

   *Patrick J. Ryan,* for appellant.

   *F. W. Root, Nelson J. Wilcox* and *J. N. Davis,* for respondent.

HALLAM, J.

In 1907 the Minnesota legislature fixed maximum rates of freight to be charged by railroad companies within this state.

From May 31, 1907, to July 21, 1913, the establishment of the rates

and the enforcement of rights accruing under the statute were restrained by injunction issuing out of the United States circuit court. During this time defendant charged rates of freight in accordance with schedules theretofore existing, which were in excess of the rates prescribed by the act of 1907. Plaintiff alleges that it paid these excessive rates on certain shipments of grain and asks judgment for the difference between the lawful rate and the rate charged. If plaintiff's allegations are true it is entitled to recover, unless its right of action is barred by the statute of limitations. The complaint alleges that the freight was paid between September 1, 1907, and April 5, 1909. The action was commenced September 10, 1917. The claims are therefore outlawed, unless the bar of the statute of limitations has been in some manner removed. L. Christian & Co. v. Chicago, St. P. M. & O. Ry. Co. 135 Minn. 45, 159 N. W. 1082. The trial court held the statute of limitations operative and dismissed the case. The propriety of this ruling is the question presented on this appeal.

1. Plaintiff makes the claim that chapter 195, p. 220, Laws 1909 (G. S. 1913, §§ 4307-4309), which authorized the attorney general to sue for the recovery of excessive freight charged during the pendency of the injunction, and permitted shippers to participate in the funds recovered on presentation of their claims to the state superseded the statute of limitations. We do not sustain this contention. The statute, whether valid or not, has no application to a suit brought by a shipper, nor to the time within which such a suit shall be brought.

2. Plaintiff contends that the bar of the statute of limitations was removed by a new promise to pay. A claim may be revived by a new promise "contained in some writing signed by the party to be charged thereby." G. S. 1913, § 7712. And where the new promise is made before the claim is outlawed, the period of limitation thereafter runs from the date of the new promise. 25 Cyc. 1328; Dern v. Olsen, 18 Idaho, 358, 110 Pac. 164, L.R.A. 1915B, 1016, Ann. Cas. 1912A, 1; Pickering v. Frink, 62 N. H. 342; Carlton v. Coffin, 27 Vt. 496.

The act of 1909 provided that within 60 days after the judicial proceedings were ended, unless said rates should be found to be unlawful, every common carrier should pay to the Railroad and Warehouse Commission for the benefit of the parties entitled thereto "all sums so

charged and collected by it on the business to which such rates apply, in excess of the rates so prescribed," and authorized the attorney general to bring suit therefor against any carrier failing or refusing to so pay. On June 9, 1913, the United States Supreme Court held the rates valid. Minnesota Rate Cases, 230 U. S. 352, 33 Sup. Ct. 729, 57 L. ed. 1511, 48 L.R.A.(N.S.) 1151, Ann. Cas. 1916A, 18. On June 24, 1913, representatives of various railroad companies, including defendant, gathered at the office of the Railroad and Warehouse Commission. A statement was issued "to the public" signed by the commission and by each railroad company. This statement recited the United States Supreme Court decision and recited an opinion of the attorney general that chapter 195, p. 220, Laws 1909, was invalid and that the legislature had no power to compel a railroad company to pay to the state the excessive amounts collected by the companies for freight rates and then contained this language: "In view of this opinion, and after conference between the Railroad and Warehouse Commission and by undersigned railway companies, it is hereby announced that such railway companies are prepared to immediately entertain properly supported claims for the period during which the rates were enjoined, and to make prompt payment thereof, shortly following the dissolution of the several injunctions. * * * It is suggested that the attached sheet be used by claimants in submitting their claims. * * * The expense bill or prepaid bill of lading should accompany the claim. If the original expense bill or prepaid bill of lading has previously been presented to any railway company supporting a claim for loss, damage or overcharge, such reference as is possible should be made to the claim in question so that the original expense bill or prepaid bill of lading may be located."

This letter, construed in the light of the language of the act of 1909 to which it refers, may fairly be regarded as a promise to pay all sums charged and collected on the business to which such rates apply in excess of the rates so prescribed.

The question is, does this constitute a new promise sufficient to remove the bar of the statute of limitations. The trial court held not. In our opinion this was error.

One reason urged in support of the court's ruling is that the writing does not identify the plaintiff's claims and promise to pay them. It

must, of course, do so in order to constitute a "new promise." Russell & Co. v. Davis, 51 Minn. 482, 53 N. W. 766; Anderson v. Nystrom, 103 Minn. 168, 114 N. W. 742, 13 L.R.A.(N.S.) 1141, 123 Am. St. 320, 14 Ann. Cas. 54. But specific reference to a particular claim is not necessary. If the language would be sufficiently specific in a bond to pay claims, surely it is sufficient in a new promise by the debtor. A general admission of unsettled matters of account between the parties is not sufficient. Conway's Exr. v. Reyburn's Exrs. 22 Ark. 290, 292. But if the general language refers with certainty to the debt, that is sufficient.

A promise to pay "every cent he owed him," it is held, sufficiently identifies the debt sued on. O'Hara v. Murphy, 196 Ill. 599, 63 N. E. 1081. It is not necessary that the new promise should state the amount of the debt. Conway's Exr. v. Reyburn's Exrs. 22 Ark. 290; First Nat. Bank v. Woodman, 93 Iowa, 668, 62 N. W. 28, 57 Am. St. 287; Wetz v. Geffe, 71 Ill. App. 313; Kincaid v. Archibald, 73 N. Y. 189, 192; Abrahams v. Swann, 18 W. Va. 274, 280, 41 Am. Rep. 692, nor even that the amount should have been fixed. "We owe you for three years salary" is held sufficient though the salary had never been fixed. Schmidt v. Pfau, 114 Ill. 494, 504, 2 N. E. 522, 527. An admission of some balance due, the amount to be ascertained by arbitration, is held sufficient. Cheslyn v. Dalby, 10 L. J. Exch. 21. A promise to pay if the debt is established, is held a good new promise. Stanton v. Stanton, 2 N. H. 425; Shaw v. Lambert, 14 App. Div. 265, 43 N. Y. Supp. 470; Read v. Wilkinson, 20 Fed. Cas. 359, No. 11,611; Heylin v. Hastings, 12 Mod. 223. So is a promise to pay if the debtor cannot prove payment. Richmond v. Fugua, 33 N. C. 445; Sweet v. Hubbard, 36 Vt. 294; Sothoron v. Hardy, 8 Gill & J. 133. And a prediction that nothing will be found due, it is held, does not vitiate the promise. 25 Cyc. 1343; Bliss v. Allard, 49 Vt. 350; Read v. Wilkinson, 20 Fed. Cas. 359, No. 11,611.

A promise to pay all claims of a definite class is, in our opinion, sufficiently definite. The language of the letter "to the public," promising to pay all claims of the class to which plaintiff's claims belong, sufficiently identified plaintiff's claims. This is in accordance with the decision of the Washington supreme court, in Blecher v. Tacoma Eastern R.

Co. 99 Wash. 34, 168 Pac. 782, a case so similar to this one that, as to matter of identification of the claim, we cannot distinguish it.

3. Respondent contends that the promise to entertain "properly supported" claims and "to make prompt payments thereof" was a conditional promise, and that the condition was not complied with. What is meant by "properly supported" is not very clear. It is "suggested" in the letter that a certain sheet be used in submitting the claims. The letter said the expense bill "should accompany" the claim, but, if it had previously been presented in support of a claim of some kind, then "such reference as is possible should be made so that it may be located." We are not at all satisfied that there was any purpose to except from this promise any just claim, or to make the form of proof suggested or any other preliminary proof a condition to payment. Defendant did not so treat its promise. The correspondence in evidence shows that it entertained claims that were not supported by preliminary proof.

If it can be said that this is a promise to pay only "properly supported" claims, and, if proper "support" is a condition to the operation of the promise, this does not avail defendant. A conditional promise becomes effectual to remove the bar of the statute on fulfilment of the condition by the creditor or on his readiness to fulfil. 25 Cyc. 1348. See McNab v. Stewart, 12 Minn. 291 (407). After considerable negotiation, defendant's freight claim agent wrote to plaintiff April 7, 1916, as follows: "We regret exceedingly the fact that you took the time and trouble to furnish us with the sheet showing the amounts actually collected in the various claims presented by you for the reason that we will be unable to handle the claims in question, as shipments moved during the period of 1907, 8 and 9, and for which period all our records have been destroyed." And on July 25, 1916, defendant's "Commerce Counsel" wrote: "None of the claims * * * was rejected on the theory that the statute of limitations had run against it. None * * * was rejected on any proof in our possession that such claim is not legitimate. The sole reason for declining each of the claims above referred to, was and is that we were and are unable to verify its correctness. * * * The reason that we were not able to verify them or check their regularity lay in the fact that the accounting department records more than six years old have been destroyed." Surely after this "regret" that

the plaintiff took the time and trouble to "support" its claims by proof, and after these and other requested avowals that the sole reason for refusal to pay the claims was the destruction of its own records, defendant will not now be heard to complain that plaintiff's claims were not "properly supported."

We are of the opinion that the letter "to the public" of June 24, 1913, was sufficient as a new promise and that it started a new period of limitation. It is proper to say that in L. Christian & Co. v. Chicago, St. P. M. & O. Ry. Co. 135 Minn. 45, 159 N. W. 1082, supra, this letter was not called to the attention of the court nor was any new promise pleaded or proved.

Order reversed.