Hakt, J.
 

 The administrator claims that when a schedule of debts against a decedent’s estate has been
 
 *103
 
 filed, notice of its filing and date of hearing thereon has been given by publication, no exceptions have been filed to the claims shown by the schedule to have been allowed by the administrator, and the Probate Court has approved the schedule of debts, such approval precludes the allowance of exceptions to the administrator’s account on the ground that he has wrongfully paid the claims allowed in the schedule.
 

 The validity of this claim depends upon the construction of Section 10509-119, General Code, the last paragraph of which provides that: “Subject to the right of review, and to be opened up for fraud, collusion or mistake, the finding and order of the court shall be final as between parties who have filed exceptions or otherwise voluntarily entered their appearance. ’ ’
 

 Since no exceptions were filed to the schedule of debts and no interested party entered his appearance, as permitted by the statute, the order of the Probate Court approving the schedule of debts did not preclude such interested parties from filing exceptions to, the account of the administrator as was done in this case under favor of Section 10506-40, General Code.
 

 The converse of this rule has been determined by the recent decision of this court in
 
 In re Estate of Beabout,
 
 136 Ohio St., 412, 26 N. E. (2d), 211, wherein it is held that where exceptions have been filed to the schedule of debts and overruled by the court and no appeal taken, it is a final determination of the question of allowance of claims as to the party so excepting, and he cannot subsequently relitigate that question by filing exceptions to the account of the administrator. But by the plain language of the statute and the inferences to be drawn therefrom, if no exceptions are filed to the schedule of debts, any interested party may file exceptions to the account of the administrator to question the validity of the claim or the propriety of its payment.
 

 The administrator further claims that in the allow
 
 *104
 
 anee and payment of the claims in question he followed the advice of Grover C. Brown, appointed by the Probate Court as his counsel, to the effect that since no exceptions had been filed to the schedule of debts ■within the time required, and since the schedule of debts had been approved by the Probate Court, it was his duty to pay such claims, and having so followed the advice of the counsel, he should not now be surcharged and made liable because of their payment.
 

 In support of this claim, appellant cites the case of
 
 Miller
 
 v.
 
 Proctor et al., Exrs.,
 
 20 Ohio St., 442, wherein it is held that executors may be exonerated from losses resulting from their ignorance of the law, provided they have exercised proper diligence and precaution and have acted upon the advice of counsel. There are cases holding that an administrator should be exonerated because of a loss due to the mistakes or errors of his counsel, as distinguished from matters where the primary responsibility rests upon the administrator himself. 24 Corpus Juris, 126, Section 584; 2 Schouler on Wills (5 Ed.), 1324, Section 1321. But the fact that an executor has had the advice of counsel as to any matter is only one factor entering into the question as to whether he has exercised due care in connection therewith. Other factors may indicate a contrary course of action.
 

 In the case at bar, the administrator assumed to pay yery large sums to his brother on a claim at that time established only by the affidavit of the debtor without consulting or advising with any of the heirs at law of the decedent and without having any order of court as to its payment. About the same time, he also paid a very large sum to the same attorney upon whose advice he now claims to have relied, to cover a claim for alleged services performed by such attorney for the decedent over a period of 24 years, without evidence of any written obligation or even a book account in support of such claim. These two claims, so paid by
 
 *105
 
 the administrator, exhausted a very substantial part of the estate. Under such circumstances, the court could well find, as it did find, that the administrator did not act with due care in the payment of these claims. It is a general rule that the advice of an attorney who has a pecuniary interest in the subject-matter upon which his advice is sought, cannot be relied upon as a defense.
 
 White
 
 v.
 
 Carr,
 
 71 Me., 555, 36 Am. Rep., 353, 81 A. L. R., 516. Furthermore, the advice of counsel cannot be a complete shield for the action of a trustee or a fiduciary. In fact, the general rule is that an executor or administrator who relies on his own judgment or even upon the advice of counsel pays at his own peril. 18 Ohio Jurisprudence, 512, Section 412;
 
 James
 
 v.
 
 West, Admr.,
 
 67 Ohio St., 28, 49, 65 N. E., 156.
 

 The administrator complains that the exceptors were not required to sustain the burden of proof in establishing their exceptions to the account of the administrator, but that the Probate Court cast the burden of refuting the claims of the exceptors on the administrator. We find no error in this regard. The general rule is that when the propriety of a credit taken by an administrator in his account is questioned, the burden of establishing the validity of such credit is on him. 18 Ohio Jurisprudence, 311, Section 249;
 
 Steward
 
 v.
 
 Barry, Admr.,
 
 102 Ohio St., 129, 131 N. E., 492.
 

 The administrator also claims that even though he erred in his determination that the claims of Brown and his brother, Frederick W. Freeman, should be paid, this does not establish fraud on his part and that he should not be surcharged for action taken in good faith. The Court of Appeals found that the allowance and payment of the two claims of Brown and Frederick W. Freeman in an aggregate sum of more than $100,000 for services to the decedent covering a period of 24 years, in view of all the circumstances, indi
 
 *106
 
 cated gross abuse of discretion on the part of the administrator. This court does not find the Court of Appeals erred in so holding. The undisputed evidence shows that the administrator was more interested in seeing that these claimants received speedy payment of their claims than he was in conserving the interests of the estate. lie allowed the claims on the same day they were filed; they «were not supported by any books of account showing any itemization of the alleged claims for services; he did not communicate with any of the heirs at law of the decedent or legatees under his will; and he paid the claims in full as soon as the schedule of debts was approved. The mere size of the claims should have dictated extreme care as to their allowance and payment, and a full and careful investigation before the money was paid out. The plain duty of the administrator, under the circumstances, was to reject these claims so as to require each of the claimants to establish the validity of his claim in a court of competent jurisdiction before payment was made. The evidence, afterwards developed in this case, indicates that both Brown and Frederick W. Freeman were entitled to some compensation for services that each had rendered to decedent in his lifetime, but the administrator certainly had no warrant to allow and pay the sums claimed by these creditors. Because of the lack of any tangible proof to establish the correctness of these claims, their payment at the time and under the circumstances constituted a fraud upon the estate.
 

 It is further claimed by the administrator that his brother, Frederick W. Freeman, on the death of Butler, was justified in taking over certain of Butler’s stocks then in Freeman’s hands, at the market value thereof without any order of court, and in applying the proceeds amounting to $19,367.01 to the partial payment of his claim agrainst Butler’s estate. It is also claimed that, in any event, the administrator is
 
 *107
 
 not liable for what Freeman did in that regard and that he cannot be surcharged with the value of such stocks.
 

 There is some conflict in the testimony as to whether Freeman held these stocks for safe keeping or as collateral to secure himself as broker on the account of Butler as a marginal stock dealer. The Court of Appeals found, and this court believes correctly, that the stocks were not specifically pledged to secure any debt of Butler to Freeman. At least, the proceeds of the stock sold by Freeman were not applied to that purpose, but were credited as having been received by Freeman himself to apply upon and reduce his claim against Butler’s estate for services rendered during Butler’s lifetime. Clearly, if these stocks were not held as collateral security to a debt of Butler to Freeman, the stocks became a part of Butler’s estate at the moment of his death and Frederick "W. Freeman had no right or authority to sell them as he did on August 27, 1936, as of February 29, 1936.
 

 "When Frederick W. Freeman presented his claim to the administrator, he represented the total as being $40,775, but credited thereon the amount which he had received from the sale of the stocks in his hands in the sum of $19,367.01, which left a balance of claim presented in the sum of $21,407.99. This latter figure was the amount of the claim allowed and afterwards paid by the administrator. The proceeds of the sale of the stocks never came into the hands of the administrator but as an asset of Butler’s estate remained in the hands of Frederick W. Freeman. The Court of Appeals indicated that the administrator might be surcharged with the full amount of the original claim of $40,775, if the stocks in- question came under his control. The record does not indicate that such stocks were, at any time, in the possession of the administrator. If that be true, the administrator could be surcharged for their value only on the ground of negli
 
 *108
 
 gence in failing to make collection of these assets of the estate from Frederick W. Freeman. Since the claimant, Frederick W. Freeman, died within a few months after he sold the stocks, we do not think the administrator could now be surcharged with more than the amount he actually paid out to Freeman on his account.
 

 While the record shows that Frederick W. Freeman rendered various services for Butler from and after the year 1916, the Probate Court held that since Freeman’s claim was an open account, all items charged therein prior to March 1, 1930, which date marked the beginning of a six-year period before Butler’s death, were barred by the statute of limitations, and the court accordingly limited the allowance of Freeman’s claim for services to such six-year period. Among other services rendered by Freeman were the collections of real estate contract payments, and at the time of Butler’s death there was in Freeman’s hands some $8,800 so previously collected over the years since 1926. The Court of Appeals found that Freeman’s claim dated from 1926 and held that there would be, under such circumstances, cross-demands between Freeman and Butler which would prevent the running of the statute and that the Probate Court erred in limiting the recovery to a six-year period before Butler’s death.
 

 This court agrees with the position of the Court of Appeals in this matter. It is a general rule that defenses are not barred by the statute of limitations and that cross-demands must be deemed compensated as soon as they mature insofar as they are equal to each other. See Section 11321, General Code; 25 Ohio Jurisprudence, 573, Section 230;
 
 Hart
 
 v.
 
 Church,
 
 126 Cal., 471, 58 P., 910;
 
 First Natl. Bank of Chicago
 
 v.
 
 Rogers, Brown & Co.,
 
 299 F., 602;
 
 Warner
 
 v.
 
 Sullivan,
 
 249 Mich., 469, 229 N. W., 484; 16 A. L. R., 339.
 

 Complaint is made of the judgment of the Court of
 
 *109
 
 Appeals in taxing the costs in this case. The Probate Court taxed them entirely against the administrator. The Court of Appeals, in reversing the judgment of the Probate Court, ordered that the costs should follow the case and be determined on final judgment.
 

 It would seem that Section 11628, General Code, should apply to this case. It provides that the court “may award and tax costs, and apportion them between the parties, on the same or adverse sides, as it adjudges to be right and equitable.” Since the judgment of the Probate Court is reversed and since this cause must be retried, the costs should be re-taxable by the court in the light of the ultimate determination of the rights of the parties. The judgment of the Court of Appeals in this regard is approved.
 

 The exceptors claim not only that the alleged written contract in favor of Brown was executed by Butler under duress and was for that reason invalid, but complain that the Court of Appeals, finding the contract to be valid, held that it prevented the running of the statute of limitations against Brown’s claim both before and after the execution of the contract.
 

 The contract in question was executed in February, 1928, more than eight years before Butler’s death, during which time he took no steps to have it set aside and during which time he continued to employ Brown as his counsel and to accept his services. The record does not support the contention that the contract was executed under duress. It must be admitted that the alleged contract was an unusual one, but the record reveals a reason for its form and terms. Witnesses who knew Butler intimately testified, and this testimony is not to any extent rebutted, that Butler, while a man of large wealth, was a penurious eccentric; that he refused to buy suitable clothes; that he was careless in his appearance and went about like a beggar; that he neglected to pay his current bills and, as one
 
 *110
 
 witness expressed it, he “was tight as a wad” and “didn’t ever want to spend a penny.”
 

 His dislike to pay bills resulted in his neglect, or, in fact, his refusal to pay Brown for his services as they were performed. When Brown insisted on payment or some arrangement to secure the payment for these services, Butler himself dictated and signed the writing and at the same time secured the return to his possession of securities which Brown had been holding for him.
 

 Another attack made upon the contract is that since it was made between a client and his attorney for the latter’s compensation, its validity must depend upon a full and fair disclosure of all its implications, terms and conditions, and that this requirement was not complied with in that the contract did not fix any amount or rate of compensation for the services in question. See 19 A. L. R., 847.
 

 It appears that there was no discussion between Butler and Brown at the time the writing was signed as to the amount of Brown’s bill already accrued, or as to what the charges for future services should be. The fact that the contract left that matter open as to both parties to be later determined on the basis of what the services should be reasonably worth, does not make it void. It may well be that the amount claimed by Brown is unreasonable, but it cannot be said that the contract is void as to an amount which the law may determine to be reasonable compensation. To read such an amount into the contract, now that the services have been actually rendered, can be no fraud upon Butler’s estate.
 

 The administrator claims that the writing, if not a formal contract, is at least an acknowledgment of indebtedness for the services of Brown and a promise to pay for them, and that it is at least sufficient to remove any bar of the statute of limitations. The exceptors claim that the writing is not effective for
 
 *111
 
 that purpose, because of lack of certainty and definiteness in that it does not indicate the extent or character of the debt which Butler is alleged to have acknowledged, and especially in that it does not specify any amount of such indebtedness. See
 
 Steinfeld
 
 v.
 
 Marteny, Exrx.,
 
 40 Ariz., 116, 10 P. (2d), 367.
 

 Section 11223, General Code, provides that “if payment has been made upon any demand founded on a contract, or a written acknowledgment thereof, or a promise to pay it has been made and signed by the party to be charged, an action may be brought thereon within the time herein limited, after such payment, acknowledgment or promise.”
 

 The authorities hold that while an acknowledgment, to prevent the running of the statute, must contain an unqualified and direct admission of a previously existing debt for which the party is liable and which he is willing to pay, the parties cannot be held to precise words or to any certain form of acknowledgment, because the statute has not prescribed any particular form. In other words, any written acknowledgment of an existing liability or any promise to pay signed by the party who is sought to be held, is sufficient under the statute (25 Ohio Jurisprudence, 602, Section 260;
 
 Felt
 
 v.
 
 Lowe, Exrx.,
 
 84 Ohio St., 479, affirming 12 C. C. [N. S.], 545); and a debt already barred by the statute of limitations may be revived by an acknowledgment or a new promise.
 
 Coffin
 
 v.
 
 Secor,
 
 40 Ohio St., 637. There is a conflict in authorities, immaterial here, as to whether a valid promise or acknowledgment revives the original cause of action so as to make it the basis of suit, or whether the suit must be based on the new promise.
 
 Hill
 
 v.
 
 Henry,
 
 17 Ohio, 9;
 
 Sturges
 
 v.
 
 Burton,
 
 8 Ohio St., 215;
 
 Coffin
 
 v.
 
 Secor, supra; Stephenson
 
 v.
 
 Line,
 
 54 Ohio St., 645, affirming 7 C. C., 147; 25 Ohio Jurisprudence, 634, Section 289.
 

 While some early cases hold that there must be, in connection with a promise or acknowledgment, a speci
 
 *112
 
 fication of the amount due or a reference by which the amount can be definitely ascertained, the better rule seems to be that a reference to the amount of the debt is not necessary, provided there is no uncertainty as to the debt referred to. The amount may be ascertained from other testimony.
 
 First Natl. Bank of Sigourney
 
 v.
 
 Woodman, Exr.,
 
 93 Iowa, 668, 62 N.
 
 W.,
 
 28;
 
 Manchester
 
 v.
 
 Braedner,
 
 107 N. Y., 346, 14 N. E., 405;
 
 Kincaid
 
 v.
 
 Archibald,
 
 73 N. Y., 189, 192;
 
 Abrahams
 
 v.
 
 Swann,
 
 18 W. Va., 274, 280, 41 Am. Rep., 692;
 
 Big Diamond Milling Co.
 
 v.
 
 Chicago, M. & St. Paul Ry. Co.,
 
 142 Minn., 181, 171 N. W., 799, 8 A. L. R., 1254;
 
 Leffek
 
 v.
 
 Luedemair, Admr.,
 
 95 Mont., 457, 27 P. (2d), 511, 91 A. L. R., 286.
 

 This court agrees with the Court of Appeals to the effect that since the written document constituted a contract as well as an acknowledgment of a debt for past services, it removes the application of the statute of limitations both before and after its execution. So finding, it is the opinion of the court that the administrator is entitled to a credit against the estate, to be allowed in his account in an amount equal to that which Butler owed to Brown as reasonable compensation for the latter’s services over the full period of time of service. This amount can have no relation to the sum which the administrator has heretofore paid to Brown.
 
 Thomas, Admr.,
 
 v.
 
 Moore,
 
 52 Ohio St., 200. It is not within the province of this court to indicate what such compensation should be. That must be determined by the probate or trial court in its sound discretion under all the facts.
 

 One other question of importance is presented by the record in this case. During the hearing before the master, Grover C. Brown was offered as a witness on behalf of the administrator to whose account exceptions had been filed. One of the items complained of in this account was the payment of Brown’s claim by the administrator. A large part of the record con
 
 *113
 
 sists of the transcript of the evidence given by Brown, most of which relates to his own services alleged to have been rendered to Bntler, as bearing upon the credit to which the administrator was entitled as against the estate for having paid Brown’s claim.
 

 Brown’s testimony was taken under objection, and later the greater portion of it was excluded by the master on order of the Probate Court on the ground that Brown was a party to the proceeding and, there-* fore, could not testify adversely to the estate of the decedent Butler, by reason of the inhibition contained in Section 11495, General Code. A further objection was made and sustained, that since Brown was attorney for Butler all communications between them were privileged, under Section 11494, General Code.
 

 In this the Probate Court was mistaken. Brown was in no sense a party to the proceeding to surcharge the administrator on the latter’s account filed in the Probate Court. The only parties to the proceeding were the exceptors and administrator. No judgment could be rendered by the court against Brown in this proceeding on the ground or claim that Lewis C. Freeman had failed to properly administer the estate. Freeman, and he alone, could be found guilty of the maladministration of the estate.
 

 Section 11493, General Code, abrogates the common-law rule as to the competency of witnesses and makes all persons having sufficient mentality and comprehension competent to testify in all cases. Sections 11494 and 11495, General Code, are exceptions to Section 11493, General Code, and must be strictly construed.
 
 Stream
 
 v.
 
 Barnard, Exrx.,
 
 120 Ohio St., 206, 211, 165 N. E., 727. A party as referred to in the statute must be a party to the record and not simply interested in the result of the litigation.
 
 Cockley Milling Co.
 
 v.
 
 Bunn, Admx.,
 
 75 Ohio St., 270, 274, 79 N. E., 478;
 
 Hubbell
 
 v.
 
 Hubbell,
 
 22 Ohio St., 208;
 
 Powell, Admx.,
 
 
 *114
 
 v.
 
 Powell, Admx., 78
 
 Ohio St., 331, 85 N. E., 541;
 
 Loney
 
 v.
 
 Walker, Admr.,
 
 102 Ohio St., 18, 130 N. E., 158.
 

 Since the administrator was charged with maladministration in the allowance and payment of Brown’s claim against the estate, the defense of the administrator was dependent upon establishing the correctness of the claim by showing the amount and value of the services which Brown had rendered to Butler. The administrator was certainly entitled to such evidence in his defense and was entitled to have Brown, necessarily a very important witness, testify on this subject. Brown, at the time his testimony was offered and taken, was not a creditor of the estate and had no claim against it. His claim had been-paid and no action of any kind had been taken or was pending to recover for the estate the money paid him on such account. There had been no adjudication or judgment of any court that he was then in debt to the estate or that he had any claim against it. The authorities hold that a creditor of a deceased person whose claim has been paid by the executor or administrator is a competent witness in behalf of such representative to establish the claim in order that the representative may be allowed credit in his account. 70 Corpus Juris, 269, Section 336;
 
 Keyes
 
 v.
 
 Gore,
 
 42 Ohio St., 211;
 
 In re Eacott, Exr.,
 
 95 Me., 522, 50 A., 708.
 

 Nor should the testimony of Brown have been wholly excluded on the ground that he had been counsel and attorney for Butler. Brown was at least a competent witness to testify to any matters upon which he did testify, relating to the services he had performed, to documentary evidence covering transactions handled for Butler, to communications made to him by Butler in the presence of third persons, and to other matters which are excepted from the operation of the exclusionary provisions of Section 11494, General Code.
 

 The judgment of the Court of Appeals is affirmed and this case is remanded to the Probate Court for
 
 *115
 
 further proceedings according to law and in accordance with the views herein expressed.
 

 Judgment affirmed.
 

 Zimmerman, Williams and Matthias, JJ., concur.
 

 Weygandt, C. J., and Day, J., dissent.