Street Improvement District No. 113 of Hot Springs
*v.* Mooney.

4-6617                                                 158 S. W. 2d 661

Opinion delivered February 9, 1942.

*James R. Campbell*, for appellant.

*Murphy & Wood,* for appellee.

GRIFFIN SMITH, C. J.   Ed B. Mooney sued Street Improvement District No. 113, of Hot Springs, and its commissioners,[1] alleging that he, as the contractor whose bid for making certain improvements was accepted, was given a certificate of indebtedness for $3,000 representing final payment.   Seven credits extended from September, 1931, to September, 1937, aggregating $1,349.50, were set out in the complaint, leaving a balance of $2,836.79 as of October 1, 1937.   The certificate bore interest at the rate of six per cent. per annum.   It was dated December 14, 1930, and was due a year later. Appellee's suit was filed December 15, 1939.

Following a general denial of all material allegations not specifically refuted, the district's answer admitted execution of the certificate, but pleaded the statute of limitation as a bar to recovery.   It was further contended that the certificate was illegally issued in that the commissioners exceeded ". . . the limit of expenditures and indebtedness which they could make or incur, and exceeded their authority in issuing [the certificate], since the cost of said district was already more

---

[1] W. C. Cole, Roy C. Raef, and George Pakis, commissioners, were joined as defendants.

than the amount of bonds issued, and more than the estimated cost thereof.''

By way of counterclaim it was averred that Mooney owned certain real property within the district as to which annual apportionments of betterments had not been paid since January 30, 1933, the total being $1,801.36.

Mooney's response admitted ownership of the property, but denied that assessments were delinquent.

J. G. McRae, appellee's manager, and custodian of records relating to construction of the improvements, testified that $16,881.24 was due when the contract was completed. The district was then without sufficient funds, and settlement was effectuated through cash payments and execution of the certificate. January 31, 1933, $370.80 was paid, ''covering interest on the certificate for three years.''

McRae testified that other payments were by ''bill exchanges,'' meaning that sums due by Mooney as betterments were from time to time applied on the certificate, the last credit having been entered September 1, 1937. This, according to McRae, discharged the final installment of $195.75.

W. E. Banks, certified public accountant, was employed by the district to audit its affairs. McRae asserted that Banks ''was sent by the commissioners to our office to make an adjustment of the assessments, and interest due on the certificates.'' Together they ''worked the credits and debits down to October 1, 1937.'' The conference with Banks occurred early in October, 1937. The credit of $370.80, January 31, 1933, represented payment made by Mooney by check, the district having simultaneously issued its check to Mooney. The analysis made by the accountant is shown in the footnote.[2]

The commissioners[3] denied there was an agreement with Mooney that his obligations to the district for better-

---

[2] Certificate of indebtedness, $3,000. Accrued interest to October 1, 1937, $1,186.34; less payment on interest, $370.80. Net balance accrued interest to October 1, 1937, $815.54. Total due on certificate and interest October 1, 1937, $3,815.54, less unpaid assessments [of] benefits on part of lots 12 and 13, block 150, owned by E. B. Mooney, $978.75. Net due Ed. B. Mooney October 1, 1937, $2,836.79.

[3] W. B. Howard, who was a commissioner when the certificate of indebtedness was executed, was succeeded by Roy C. Raef.

ments would be credited on the certificate. A preponderance of direct evidence supports the district's contentions in this respect, although there are circumstances—such as inconsistencies in amounts claimed at a particular time —indicating an understanding between the commissioners and Mooney that he was not to be pressed on the betterments charges.

It is not shown that the agreement contended for by Mooney was made at a meeting of the board of commissioners. McRae's testimony is to the contrary. Nor do we think public policy permits a contract of this nature. At the time the "understanding" was reached, all betterments had been pledged as security for a bond issue of $14,000, and interest. It was not within the power of the commissioners, therefore, to waive collection as to Mooney, even if it should be conceded that the intent was to defer settlement until the mortgage debt had been paid, at which time the commitments Mooney claims were made to him would attach.

July 28, 1936, Roy C. Raef, one of the district's commissioners, and secretary of the board, filed with the county clerk a certificate in which it was said that ". . . for the purpose of raising money to carry on [improvements contemplated by the creative ordinance of 1927] the following is a statement of the indebtedness of the years 1935 and 1936: Bonds due [in] 1935, $1,500." On a blank line following a blank line there is an entry of $350, presumably representing bond interest. This is followed by the notation: "Interest due 1935, certificate of indebtedness Ed. B. Mooney, $587.40. Total, $2,437.40."

A somewhat similar certificate filed in 1938 (month and day not disclosed) recites ". . . indebtedness of [Street Improvement District No. 113] maturing during the year 1937 [is]: Bonds due for 1937, $2,000. Interest due April 1, 1937, $125. Certificate of indebtedness, October 1, 1937, $100. Ed. B. Mooney, $375. Total maturing indebtedness for the year 1937, $2,600."

Appellants do not dispute that the certificate was issued for value, and that the only payment was in

1933.[4] According to the district's secretary, who acted for the commissioners, $587.40 was due appellee in 1935. Interest at six per cent. from December 14, 1930, to December 14, 1935 (not compounded, and not computed with annual rests) would be $900. A year later [5] $100 was shown to have been due on ''certificate of indebtedness'' October 1, while $375 was listed as the amount due Mooney. If no payments had been made, the interest would have been $1,080, less $370.80, if we accept McRae's testimony; or $1,080, less $391.48 if Collector Langley's books are correct. [6]

*Limitation of Actions.*—A written acknowledgment that a specific debt subsists has the effect, in most jurisdictions, of creating a new period from which the statute of limitation runs. Unless there is something in the acknowledgment negativing an intent to pay, the law presumes a promise. The rule announced by editors of Corpus Juris (vol. 37, §§ 566 to 572, Limitation of Actions) is that in order to take the debt out of the statute, an acknowledgment or promise to pay must satisfactorily and certainly appear, and it must refer to the debt in question. As was expressed in *Finn* v. *Seegmiller*, 134 Iowa 15, 111 N. W. 314, the acknowledgment must be clear and direct with reference to the indebtedness admitted.

Mr. Justice SANDELS, in *Opp* v. *Wack*, 52 Ark. 288, 12 S. W. 565, 5 L. R. A. 743, said that where a promise to pay a debt barred by limitation, or where an acknowledgment within the period of limitation is relied upon, ''and is otherwise sufficiently specific,'' parol proof may be admitted to show that there was but one obligation due from defendant to plaintiff, thus identifying the debt to which the promise related. ''But,'' he continued, ''where

---

[4] The accountant who audited the district's books testified that the payment made in 1933 was $370.80, to apply on interest. J. O. Langley, collector for District No. 113, testified that his books showed a credit of $391.48 in appellee's favor ''as of January 30, 1935.'' [The date ''1935'' is apparently an error of the reporter, who intended to write ''1933.'']

[5] Although Secretary Raef's certificate was filed in 1938, it covered obligations for 1937.

[6] These two items cannot be harmonized.

there are two or more distinct obligations due the plaintiff, the written acknowledgment must itself identify the one or ones to which the promise to pay attaches.''

Under ''Limitation of Actions'' in 34 American Jurisprudence, cases are cited to the effect that a new promise, made before a debt is barred, does not create a new and substantive contract. It is merely evidence of an existing liability, but fixes a new date from which the statute runs. Section 293 announces the general rule to be that there is no legal difference between an acknowledgment or payment made before and one made after limitation has attached. The original debt is sufficient consideration for the promise, although in some jurisdictions a distinction is drawn.

The Court of Appeals for the United States, Eighth Circuit, considered Arkansas decisions in an opinion written by Judge GARDNER April 25, 1939, (*Hunt, et al., v. Lyndonville Savings Bank & Trust Co., et al.*, 103 Fed. 852.) It was there said: ''In considering whether there has been a sufficient acknowledgment in writing to toll the statute of limitations, the question to be determined is the intention of the debtor. It is generally held to be sufficient if, by fair construction, the writing constitutes an admission that the claim is a subsisting debt unaccompanied by any circumstances repelling the presumption of the party's willingness or intention to pay.'' *Morris v. Carr,* 77 Ark. 228, 91 S. W. 187, and *Conway* v. *Reyburn,* 22 Ark. 290, were cited.

In the Morris-Carr case, *supra, Shepard* v. *Thompson,* 122 U. S. 231, 7 S. Ct. 1229, 30 L. Ed. 1156, was cited, the statement being that ''. . . in order to continue or revive the cause of action after it otherwise would have been barred by the statute, there must be either an express promise of the debtor to pay the debt, or else an express acknowledgment of the debt, from which his promise to pay may be inferred. A mere acknowledgment, though in writing, of the debt as having once existed is not sufficient to raise an implication of such a new promise. To have this effect there must be a distinct and unequivocal acknowledgment of the debt as still subsisting as a personal obligation of the debtor.''

A quotation from 19 American & English Encyclopedia of Law (2d Ed.), 303, is: ''A mere acknowledgment of the claim as an existing obligation is such an admission as the law will imply therefrom a new promise to pay, which will start the statute anew, when it is not accompanied by anything negativing the presumption of an intention to pay the debt.''[7]

Mr. Justice Wood, who wrote the opinion in *Morris v. Carr,* said: ''All [the court intended to say in *Ringo v. Brooks,* 26 Ark. 541] was that the acknowledgment should be made to the party in interest, and be of such unequivocal character as to recognize the indebtedness as a subsisting obligation, and that there should be nothing in the face of the writing or written evidence of acknowledgment to repel the presumption of an intention to pay which the law raises by such acknowledgment.''

It is said in *Big Diamond Milling Co.* v. *Chicago, Milwaukee & St. Paul Railway Co.,* 142 Minn. 181, 171 N. W. 799, 8 A. L. R. 1254, that a new promise made in writing either before or after the debt is outlawed starts a new period of limitation:—''The new promise must identify the debt, but specific reference to it is not necessary if the language with certainty covers it. Language that would be sufficiently specific in a bond is sufficiently specific in a new promise. A promise to pay all claims of a class is sufficient. A letter to the public, signed by a railroad company, promising to refund the difference between a statutory freight rate and a higher rate collected on all shipments made during a period of litigation to determine validity of the statutory rate, is sufficiently definite.''[8]

In *Belcher* v. *Tacoma Eastern R. Co.,* (1917) 99 Wash. 34, 168 Pac. 782, the railroad company had applied to public service commission for permission to cancel unjust switching charges exacted of a lumber company.

[7] The excerpt from American and English Encyclopedia of Law is used in the Morris-Carr case.

[8] The quoted matter is from 8 A. L. R., p. 1254.

The Pacific Reporter's headnote to the case is copied in the footnote.[9]

In an opinion written for this court by Mr. Justice RIDDICK (*Kelley* v. *Graham*, 70 Ark. 490, 69 S. W. 551), it was held that where a mortgagor sought to set aside a void sale under power contained in the mortgage, and asked (in the event the court found there was anything due on the mortgage) "that an account thereof be stated, and the plaintiff have leave to bring the same into court and pay the same, which she now and here offers to do," the running of the statute of limitations as to the mortgage was stopped by the plaintiff's tender.

Wood on Limitations, vol. 1 (4 Ed.), p. 344, states the rule to be that where an acknowledgment is relied upon to renew a debt, four requisites are indispensable: (1) The acknowledgment must be in terms sufficient to warrant the inference of a promise to pay the debt. (2) It must be made *to* the proper person. (3) It must be made *by* the proper person. (4) Necessary formalities must attend, where such are required by statute. . . . It is then said "From these rules it will be seen that, whatever abstruse theories may formerly have existed in reference to the principles upon which these statutes are predicated or in reference to the presumption arising therefrom, it is now well settled that no acknowledgment is sufficient to take a case out of the statute, unless it is of such a character that a new promise sufficient to revive the debt can be fairly drawn therefrom; and the

[9] "Where a railroad invoked the aid of the public service commission, and sought permission to cancel admittedly unjust switching charges attempted to be exacted of a lumber company, confessing at the time that the lumber company had been a favored shipper, and had operated under a preferential tariff, and, as a means of inducing the commission to allow it to absorb the unjust switching charges, imposed on itself obligation to remove any suggestion of discriminatory charges or violations of the long and short haul provision of the public service commission act, and to make refund to all claimants down to the lower basis prescribed, the railroad having been allowed to cancel the switching charges, another lumber company could recover from it for excessive charges barred by limitation when the road filed its petition with the public service commission, this on account of the road's undertaking with the commission to make refund to all claimants."

theory upon which the courts proceed is that the old debt forms a good consideration for a new promise, either express or implied, and that any clear and unequivocal admission of the debt as an existing liability carries with it an implied promise to pay, unless such inference is rebutted either by the circumstances or the language used.''

Tested by the rules so generally accepted, we think the district's public acknowledgment of the balance stated in 1935 and 1937 to be due appellee established a new period from which the statute of limitation began to run.

Act 151 of the extraordinary session of 1919, (Crawford & Moses' Digest, §§ 5645, 5646) requiring all road, drainage, and improvement districts where bonds are sold to file an annual report with the clerk of the county court, was declared void in *Jones* v. *State,* 154 Ark. 288, 242 S. W. 377, the holding being that, under art. 6, § 19, of the constitution, the legislation was not within the Governor's call. Act 515, approved March 20, 1923, directs commissioners of road districts, drainage districts, ''and improvement districts of every kind where bonds are sold, whether created by general or special law,'' to file with the county clerk a report on or before January 10 of each year. Act 140, approved April 20, 1895 (Pope's Digest, § 7358) requires the board of commissioners of a municipal improvement district to file with the county clerk a ''settlement,'' showing ''all collections and moneys received and paid out,'' etc. In *Buchanan* v. *Halpin,* 176 Ark. 822, 4 S. W. 2d 510, it was held that mandamus would lie to compel compliance with § 5718 of Crawford & Moses' Digest, which is § 7358 of Pope's Digest.

For the purpose of this opinion it is immaterial whether the law requiring commissioners of improvement districts *of every kind* [10] to file reports with the county clerk is applicable, or whether § 7358 of Pope's Digest controls: the fact remains that the report was filed with the county clerk in 1936 before the bar of the statute of limitation attached. This report constituted

[10] Italics supplied.

acknowledgment of an indebtedness to Mooney. The admitted obligation could relate only to the certificate; hence, limitation as a plea in bar cannot be sustained.

*Validity of the Certificate.*—The next question is, Was the certificate void *ab initio* for want of power in the commissioners?

Act 184, approved March 21, 1925, amends Act 395, approved March 24, 1921. The 1925 enactment provides that the petition for improvements shall specify "what percentage of the value of the real property in the district as shown by the last county assessment, the said improvement shall not exceed in cost." No single improvement shall be undertaken which alone will exceed in cost 50 per cent. of the value of the real property in such district, as shown by the last county assessment; ". . . but in determining what shall be 50 per centum of the value of the real property in the district, interest upon borrowed money shall not be computed as part of the cost. Provided, further, an improvement may be made which does not exceed 100 per cent. of the assessed value determined as above if 75 per centum of the property owners, in value, in said district, petition therefor."

Emmett Jackson, city clerk, identified what purported to be a report of the commissioners (undated), in which cost of the improvement was estimated to be $15,650.75, "which sum includes engineering and attorneys' fees, and does not exceed 95 per cent. of the value of the real property situated within the district as shown by the last county assessment." Proof of publication of an ordinance was introduced, showing the estimated cost. Appellants concede that assessed valuation of the real property was $19,950. Ninety-five per cent. would be $18,952.75.[11] It is stated by way of narrative that the

---

[11] The auditor's report showed total receipts from June 14, 1928, to October 6, 1937, to have been $32,694.85. Mooney was paid $14,128.66. Engineers received $808.64. Three small items totaled $63.50, making the construction cost $15,000.80. Organization cost was $662.50. This, added to construction, brought the total to $15,663.30. The overall cost, including certificate of indebtedness, was therefore $18,663.30.

petition provided the improvement should not exceed 95 per cent. of the assessment. However, the petition was not introduced. To sustain the contention that the certificate of indebtedness was void, interest on the $14,000 bond issue is computed, amounting to $4,479.14, the total thus ascertained being $23,431.64. In respect of the right of petitioners to fix a limit beyond which money may not be borrowed, interest is not a factor; nor was the consideration for which the certificate was issued ·borrowed money. It was executed to evidence an obligation due for work completed, and was valid.

The judgment finding the district liable on the certificate is affirmed, but the amount is referable to the terms of the certificate, without regard to credits for assessed benefits. The only allowable payment is $370.80.

*The Cross-Complaint.*—The accountant found that Mooney paid $20.70 on his 1931 assessment, leaving a balance of $175.05 for that year. For 1932, 1933, 1934, 1935, 1936, and 1937, the yearly installments were $195.75—a total of $1,349.55 for the seven years.

The record does not show whether interest was added after the installments became delinquent. The audit was not introduced, and it is difficult to determine, from the sketchy references, just how the balances were arrived at: e. g., after listing the six items of $195.75 each and the 1931 balance of $175.05, the analysis is: "Less unpaid assessments of benefits on part of lots 12 and 13, block 150, owned by E. B. Mooney, $978.75." In the accountant's audit a satisfactory explanation was no doubt made, but this does not appear in the record.

Judgment on the cross-complaint is reversed. The cause is remanded with directions to ascertain the correct amount due by Mooney on his assessment of betterments, with interest, but without penalty; nor may Mooney plead the statute of limitations on any of these items. *Martin* v. *Board of Commissioners of Street Improvement District No. 5 of Stuttgart*, 190 Ark. 747, 81 S. W. 2d 414.