The Honorable Bill H. Stovall, III State Representative 2324 Heber Springs Road West Quitman, AR 72131-9426
Dear Representative Stovall:
This is in response to your request for an opinion on the following questions involving the Skypoint Suburban Improvement District (SID)[1]
and Skypoint Estates Subdivision and Improvement District Property Owners, Inc. (SPOA):
 1. Are the SPOA and SID `conjoined' as stated in the 1978 court order creating the Sky Point Estates Suburban Improvement District or is the SID autonomous as Melanie Grayson states in her legal opinion?
 2. If the two are separate entities, what legal rights do the taxpayers have with the SID as a group or individually?
 3. Can individual taxpayers or groups of taxpayers attend annual or other meetings of SID commissioners?
4. Does public notice need to be given of these meetings?
 5. Is the SID required to provide financial reports (with supporting detail) to taxpayers/property owners periodically and/or upon request?
 6. Is the SPOA, `conjoined' with the SID entitled to financial reports (with supporting detail) periodically (such as at semi-annual SPOA meetings) and/or upon request? If not, can the SPOA, as a group of taxpayers, request such reports?
 7. Are annual or other periodic audits of financial records required? If not, can they be requested by individual taxpayers and/or the SPOA?
 8. Can the SPOA have input and/or approval of activities or projects that the SID commissioners may be considering?
 9. If not, can taxpayers individually or as a group have such input and/or approval of activities or projects?
 10. Can the SPOA have a role in the selection of or replacement of SID commissioners?
 11. If not, can individual taxpayers or a group of taxpayers have such a role?
 12. If dissatisfied with one or more SID commissioners can they be replaced and, if so, how? Does statute 14-92-209 apply? If it does apply, does each property owner (or joint owner) have one vote or is it one vote per lot owned? At the present time, all SPOA voting is one vote per lot.
 13. Is it appropriate for SID commissioners to spend taxpayers' monies to obtain legal opinions which in effect make it difficult for the SPOA (all taxpayers) or individual taxpayers to have access to financial records with details, input into projects, etc.?
RESPONSE
Your thirteen specific questions are answered below in the order posed. These responses are based on the relevant law as best I can discern from the materials submitted with your request. My review is necessarily limited to the application of state law, and does not encompass any factual dispute that may exist with respect to the role of the SPOA vis a vis the SID. It seems clear as a general underlying principle that the SPOA is accorded no role or status under state law in carrying out the purposes of the SID. The governing body for a suburban improvement district is the board of commissioners. With these principles in mind, I will proceed to address your specific questions.
Question 1 — Are the SPOA and SID `conjoined' as stated in the 1978 courtorder creating the Sky Point Estates Suburban Improvement District or isthe SID autonomous as Melanie Grayson states in her legal opinion?
The 1978 court order approving the creation of the SID states that "[the] name of the three initial commissioners on the Board of Commissioners of this improvement district in conjoint Property Owners Association shall be Dave Wisdom Harrod, James Weed, and Harvey Davidson." See Final Order, supra at n. 1, at p. 3 (emphasis added). I am unable to explain or interpret this reference to "in conjoint Property Owners Association." It appears from the documents you have provided that the petition was entitled "Petition to Create a Suburban Improvement District and Property Owners Association." The Notice also states that a petition has been filed praying for "formation of congruent Property Owners Association. . . ." While this suggests that the petitioners sought to create a combined or conjoined entity, the language of the Order indicates that the court only approved the creation of the improvement district. Indeed, this is in accordance with state law as I have found no authority or precedent for the creation of a property owners association through a petition to create a suburban improvement district.
The County Court in this instance approved the creation of the SID pursuant to Ark. Stat. Ann. §§ 20-701 — 739, the governing state law at that time. A district organized under these provisions has broad authority to accomplish its purposes. See generally Cherokee VillageHomeowners Protective Association v. Cherokee Village Road and StreetImprovement District No. 1, 248 Ark. 1055, 455 S.W.2d 93 (1970). As stated by the court in Cherokee Village, "[o]nce an improvement district is lawfully created, it assumes the status of a de jure governmental agency[.]" 248 Ark. at 1058.). The governing body for the agency is the board of commissioners. See A.C.A. §§ 14-92-207 (formerly A.S.A. §§ 20-703 and — 717) and 14-92-210 (formerly A.S.A. § 20-704.1). And as noted by the court in another case involving a suburban improvement district, "the manner in which [the board of commissioners'] duty is performed is largely a matter within their discretion." Page v. Highway 10, Water PipeLine Improvement District No. 1, 201 Ark. 512, 516, 145 S.W.2d 344
(1940). Thus, as a matter of state law, I believe it is correct to say that the SID is autonomous. The district must act for the benefit of all the affected property owners. 248 Ark. at 1059 (noting that if any property owner feels aggrieved, he has the right to have the decision of the improvement district judicially reviewed). But the board of commissioners is the body charged under state law with the responsibility of administering the district.
It is stated in material attached to your request that the SPOA and the SID "have always operated together." Letter from John E. Allen to State Representative Bill Stovall (January 4, 2001). Perhaps this explains the County Court's reference to "this improvement district in conjoint Property Owners Association." I can only speculate in this regard, and in any event it is my conclusion that regardless of their historical relationship, the SPOA and the SID are separate and distinct entities. Under the statutory scheme governing the creation and administration of a suburban improvement district, the board of commissioners is the body vested with the power and duty to operate the district. The board cannot abdicate or delegate to another entity its authority in this regard. The board is authorized, pursuant to A.C.A. § 14-92-210 (2), to "[j]oin with any other political subdivision, municipality, district, or governmental agency, either state or federal, . . . as to the performance of any of its functions." Clearly, this authorization does not extend to a private entity such as a property owners association. This in my view further belies any assertion that the SID can somehow be lawfully joined or combined with the SPOA.
Question 2 — If the two are separate entities, what legal rightsdo the taxpayers have with the SID as a group or individually?
I assume that the SPOA is the "group" of taxpayers referred to in this question. I also assume that your question regarding "legal rights" is asked in relation to carrying out the purpose(s) of the SID. According to my research, a property owners association such as the SPOA has no rights under state law in this regard. As noted above, the Board of Commissioners is the body vested with the power and duty to carry out the purposes of the SID. The SPOA has no role or status under state law in connection with the SID.
With regard to the rights of individual taxpayers, reference must be made to the state statutes under which the SID was organized. To highlight a few of these rights, property owners may petition the board to order a reassessment under certain circumstances (A.C.A. § 14-92-217). They may petition to extend improvements (§ 14-42-218). They may petition the board to sell property owned by the district (§ 14-92-401). They may petition for the removal of commissioners (§ 14-92-209, discussed infra. in response to Question 12). This is not an exhaustive list, but rather is illustrative of the fact that individual property owners in the SID do have certain statutory rights. Additionally, as a general guiding principle, the district must act for the benefit of all affected property owners. Cherokee Village, supra. See also, generally, Page, supra. The court in Cherokee Village went on to note that an aggrieved property owner "has the right to have the decision of the improvement district judicially reviewed." 248 Ark. at 1059 (and statutes cited therein).
Question 3 — Can individual taxpayers or groups of taxpayers attendannual or other meetings of SID commissioners?
It is my opinion that the answer to this question is "yes," assuming that the meeting is not subject to an exemption under the open meetings provision of the Arkansas Freedom of Information Act ("FOIA").[2] This office has previously opined that meetings of a suburban improvement district are subject to the FOIA. Op. Att'y Gen. 92-312.
Question 4 — Does public notice need to be given of these meetings?
"Yes," in my opinion. See A.C.A. § 25-19-106 for the notice requirements.
Question 5 — Is the SID required to provide financial reports (withsupporting detail) to taxpayers/property owners periodically and/or uponrequest?
My research has disclosed only one act imposing a financial reporting requirement on improvement districts, generally. Act 515 of 1923 states that "all commissioners of road districts, levee districts, drainage districts and improvement districts of every kind where bonds are sold . . . shall be required to file a report on or by the tenth day if [sic] January of each year, during the time improvement taxes are being collected and expenditures are being made. . . ."[3] See generallyStreet Improvement District #113 of Hot Springs v. Mooney, 203 Ark. 745,158 S.W.2d 661 (1942). The report must be filed with the clerk of the county court. See Acts 1923, No. 515, § 1. I lack sufficient information to determine whether this act applies to the SID. If it does, then a property owner would be able to obtain the report from the clerk's office. I have found no other statute or rule of law requiring that the board of commissioners of a suburban improvement district generate financial reports, either periodically or upon request. If, however, such reports exist, then in my opinion such reports are as a general matter subject to inspection and copying under the FOIA. See generally A.C.A. §25-19-105 (Supp. 1999) (governing the examination and copying of public records).
Question 6 — Is the SPOA, `conjoined' with the SID entitled to financialreports (with supporting detail) periodically (such as at semi-annualSPOA meetings) and/or upon request? If not, can the SPOA, as a group oftaxpayers, request such reports?
It is my opinion that the answer to the first part of this question is "no." As discussed above, the SPOA is accorded no role or status under state law in connection with the SID. As for the SPOA requesting financial reports, while such a request may certainly be made, I must conclude that the SID is not required by state law to comply. If such reports in fact exist, either by virtue of the requirement imposed under Act 515 of 1923, discussed above, or simply on the district's own initiative, then the request should be made by an individual citizen. Act 515 provides for the inspection of the annual report by "any taxpayer in said district." Id. at § 1. Any such report(s) may also be requested under the FOIA. But it must be recognized that the rights accorded under the FOIA do not extend to groups or organizations. Instead, the FOIA provides that public records shall be open to "any citizen of the State of Arkansas." A.C.A. § 25-19-105 (a).
Question 7 — Are annual or other periodic audits of financial recordsrequired? If not, can they be requested by individual taxpayers and/orthe SPOA?
The answer to the first part of this question appears to be "no." There is no auditing requirement under the statutes governing the creation of the SID. Nor have I found any other applicable statutory auditing requirement. Compare, e.g., A.C.A. §§ 14-89-1102 (municipal improvement districts) and 14-121-311 (drainage improvement districts). Regarding the second part of this question, if you are asking whether the SID could becompelled to order an audit, it is my opinion that the answer is "no," in the absence of judicial intervention.
Question 8 — Can the SPOA have input and/or approval of activities orprojects that the SID commissioners may be considering?
It is my opinion that the answer to this question is "no," based upon my conclusion above that the SPOA is accorded no role or status under state law in connection with the SID.
Question 9 — If not, can individual taxpayers or a group of taxpayershave such a role?
It is my opinion that the answer to this question is also "no," other than through the exercise of their specific statutory rights noted above in response to Question 2.
Question 10 — Can the SPOA have a role in the selection of or replacementof SID commissioners?
It is my opinion that the answer to this question is "no," for the reasons stated above with regard to the absence of any statutorily recognized rights of the SPOA in relation to either the creation or the operation of the SID.
Question 11 — If not, can individual taxpayers or a group of taxpayershave such a role?
Property owners clearly had a role in the selection of commissioners by virtue of the petitioning process for forming the district. See former A.S.A. § 20-701. It appears that commissioners were named in the petition to create the district and appointed as commissioners by the county court. Id. With regard to the replacement of commissioners, please note that I have enclosed a copy of Attorney General Opinion 95-348, which sets out the legislative history of A.C.A. § 14-92-209, the so-called "recall provision." This opinion is self-explanatory and I will not repeat the analysis but will simply note that I agree with the conclusion therein that property owners in a pre-1981 district have various opinions in addressing the removal of commissioners by recall and replacement of commissioners. I refer you to the opinion for a review of the specific options.
Question 12 — If dissatisfied with one or more SID commissioners can theybe replaced and, if so, how? Does statute 14-92-209 apply? If it doesapply, does each property owner (or joint owner) have one vote or is itone vote per lot owned? At the present time, all SPOA voting is one voteper lot.
Please see my response to Question 11 above. Following the analysis set forth in the cited opinion, it is my conclusion that A.C.A. § 14-92-209
applies to pre-1981 districts. Regarding voting rights, reference must be made to A.C.A. § 14-92-204 (7), which states that "[o]n all questions submitted to the realty owners of a district or proposed district, each owner of realty therein shall be entitled to cast one (1) vote." (Emphasis added).
Question 13 — Is it appropriate for SID commissioners to spend taxpayers'monies to obtain legal opinions which in effect make it difficult for theSPOA (all taxpayers) or individual taxpayers to have access to financialrecords with details, input into projects, etc.?
In accordance with A.C.A. § 14-92-216 (a) (2) and (b) (2), the board of commissioners may "employ such engineers, attorneys, or other assistants as they find necessary. . . ." It is my opinion that the board has broad discretion in making such employment decisions (see, generally, Page,
supra, regarding a board's discretion in performing its duties). It is thus my opinion as a general matter that the "appropriateness" of expenditures for legal advice is a matter for the commissioners to decide. Concerns or allegations that property owners' rights are being adversely impacted are necessarily factual in nature and thus do not fall within the ordinary scope of an opinion from this office.
Assistant Attorney General Elisabeth A. Walker prepared the following opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh
[1] This is the name appearing in the June 16, 1978 Order issued by the County Court of Cleburne County approving the creation of the SID. See
Final Order Approving the Creation of Skypoint Estates Suburban Improvement District, No. CC-77-6, at 4 (June 16, 1978).
[2] The provision governing open public meetings is found at A.C.A. §25-19-106 (Supp. 1999).
[3] Because the act does not apply to certain counties (see Section 4), it is considered special legislation and is not codified.